## Blake, Appellant, *v.* Wilson.

*Workmen's compensation — Accident "casual in character" — "Regular course of business"—Roofing silo on farm—Act of June 2, 1915, P. L. 736—Departure from rules—Public policy—Appeals —Words and phrases—"And."*

1. Where the record of a workman's compensation case shows departure from established rules and procedure, affecting only the rights of the parties to the action, and no specific complaint is made with respect thereto, the court will assume that the departure was made by and with mutual consent; not so, however, when the departure manifests a clear disregard of recognized public policy, or is in violation of expressed statutory authority. Restrictions so imposed are not subject to the pleasure of the parties or the powers of the courts. In such case the appellate court will take notice of the error whether assigned or not.

2. In determining whether the work in which an employee was engaged at the time of the accident is "casual in character and not in the regular course of the business of the employer," the expression "casual in character" will be construed as having a dis-

tinct reference to the engagement to render service, and an implied reference, as well, to the distinction that naturally arises when the service stipulated for, is outside of the regular business of the employer; so that both are included in the exception; and, because of the conjunction "and" connecting them, both must concur, neither of itself being sufficient to constitute an exception.

3. An employee's engagement is casual in character when it comes about by chance, fortuitously, and for no fixed duration of time.

4. The words "regular course of business of the employer," have reference to the habitual or regular occupation that the party is engaged in with a view to winning a livelihood or some gain.

5. The expression can refer only to the experience and custom in the conduct of the business as is of usual, if not daily, occurrence or observation.

6. Where a woman owning and operating a farm and engaged in no other business, employs a school teacher, during the temporary suspension of his school, to roof and paint a silo, the construction of which had been suspended for some time, and such employee is killed while at work on the silo, the accident is "casual in character and not in the regular course of the business of the employer," within the meaning of section 104 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, and the widow of such employee is not entitled to compensation for his death.

Argued October 5, 1920. Appeal, No. 165, Oct. T., 1920, by plaintiff, from order of C. P. Lawrence Co., March T., 1920, No. 99, affirming decision of Workmen's Compensation Board in case of Mintie Blake, claimant, v. Effa M. Wilson, written also as Effie M. Wilson. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Appeal from decision of Workmen's Compensation Board. Before EMERY, P. J.

The opinion of the Supreme Court states the facts.

The court affirmed the decision of the board disallowing claim. Plaintiff, widow of Garrett H. Blake, appealed.

*Error assigned* was order of court, quoting it.

*William McElwee, Jr.,* for appellant.—The question as to whether or not Garrett Blake, at the time of the accident, was engaged in employment casual in character and not in the regular course of the business of his employer, is not now before this court: Baring v. Shippen, 2 Binney 154, 167; Overseers of Roxborough v. Bunn, 12 S. & R., 292, 294; Elkinton v. Fennimore, 13 Pa. 173, 176; Danley v. Danley, 179 Pa. 170; Malin v. James, 244 Pa. 336; Chartiers Creek Bridge, 235 Pa. 365.

A case cannot be tried in this court on a different theory than that shown by the pleadings and that on which it was tried in the court below: Morrett v. Fire Assn. of Phila., 265 Pa. 9.

The employment that is excluded must be both casual in character and not in the regular course of the business of the employer before it is excluded. Employment which does not have both these qualifications is not excluded. Garrett Blake's employment was in the regular course of the business of the employer, and it therefore is immaterial whether it was casual in character or otherwise.

It is the employment in which the injured man is engaged and the business of his employer that section 104 of the Workmen's Compensation Act refers to, and it does not exclude the employee who is a "jack of all trades," nor limit the purposes of the act to an employee who works his entire life at one job.

The work in which Garrett Blake was engaged at the time of the accident was not casual.

*J. Norman Martin,* of *Martin & Martin,* for appellee.

OPINION BY MR. JUSTICE STEWART, December 31, 1920:

On the argument of this appeal it was suggested by the court to counsel that another question than that raised by the assignments of error, which challenges the constitutionality of the act entitled, "A supplement to

an act, entitled 'The Workmen's Compensation Act of 1915,'" approved June 3, 1915, P. L. 777, would seem necessarily to arise because of its fundamental character, and which had not been adverted to, namely, whether the work in which the employee was engaged when he met with the accident which resulted in his death, was casual in character and not in the regular course of the business of the employer, as required by section 104 of the Workmen's Compensation Act of 1915, P. L. 736. Inasmuch as all the facts necessary for a proper consideration of the question appeared, and since there was no occasion for further delay, counsel on each side submitted at bar a brief. In appellant's brief the consideration of the question suggested is objected to because the several counsel had agreed in writing, in order to save the printing of the testimony taken before the referee, that the only issue involved in the appeal was the constitutionality of the Act of Assembly, approved June 3, 1915, P. L. 777, entitled "A supplement to an act entitled 'The Workmen's Compensation Act of 1915,'" exempting from the provisions of the original act "domestic servants and agricultural laborers," and that the testimony taken before the referee was not material to the adjudication of the issue involved in this appeal. This objection is fully met by what was said in Canole v. Allen, 222 Pa. 156, as follows: "Where the record of the case shows departure from established rules and procedure, affecting only the rights of the parties to the action, and no specific complaint is made with respect thereto, we assume that the departure was made by and with mutual consent—conventio legem vincit. Not so, however, when the departure manifests a clear disregard of recognized public policy, or is in violation of expressed statutory provision. Restrictions so imposed are not subject to the pleasure of the parties or the power of the courts. In such case this court will take notice of error whether assigned or not." And further, the question suggested needs for its determination noth-

ing outside of the record before us. The one question to
be considered arises in connection with a single finding
of fact by the referee, and it is one of law purely. Be-
cause to our mind it is the governing question, upon the
solution of which the facts of this appeal depend, we
shall give it first consideration.

The appeal is from a judgment of the Court of Com-
mon Pleas of Lawrence County, to which court an ap-
peal had been taken from an award by the Workmen's
Compensation Board disallowing a claim of appellant
for compensation for the injuries sustained by her hus-
band while in the employ of the appellee, which injuries
resulted in his death. From the opinion of the
compensation board dismissing the claim we ex-
tract the following: "The avowed purpose of this
appeal, as stated by counsel for the claimant, is for the
purpose of challenging the constitutionality of the Act
of June 3, 1915, P. L. 777, exempting domestic and agri-
cultural workers from the provisions of the Workmen's
Compensation Act of June 2, 1915......One of the
grounds of the appeal is as to the following language:
'On November 12, 1918, Garrett H. Blake was employed
by the husband of Effie M. Wilson, who was running the
farm, to paint this silo, which Garrett H. Blake agreed
to do for about $15,' etc.

"Under the amended Compensation Act we will modi-
fy this finding of fact for the purposes of this appeal
and find that Effie M. Wilson was the owner of the said
farm, was operating it in her own behalf, and that her
husband was her authorized agent in employing the said
Garrett H. Blake to perform the said work. In other
words, there is no question about the responsibility of
Effie M. Wilson, as owning and operating her own farm,
and liability if the exemption under consideration is un-
constitutional."

No other facts are needed than those we have here.
The concluding sentence states a legal proposition, the
affirmance of which would negative the suggested ques-

tion which we are about to consider, as will readily be seen, and may therefore be passed.

The Workmen's Compensation Act of 1915 by section 104 expressly excludes from the operation of its provisions "persons whose employment is casual in character and not in the regular course of the business of the employer." The person injured was a workman in the employ of the appellee, a married woman, the owner of the farm upon which she resided and which she operated in her own behalf. Outside the operation of her farm she was engaged in no other business activity. She had begun the construction of a silo upon this farm, the work on which had been interrupted for some time. What remained to complete it was to roof the structure and paint it. She engaged the husband of the claimant to finish the job, and it was while he was so engaged that he met with the accident that caused his death. Was the employment in which he was so engaged casual in character and not in the regular course of the business of his employer? It may be conceded that the several terms in the exemption clause above quoted are so far ambiguous as to be fairly susceptible of more than one meaning. When such uncertainty arises in legislative enactments, the duty of interpreting the meaning of the legislature, as it may be derived from the language used, devolves upon the court. The one rule which the court is allowed to apply in such case is limited to a consideration of the objects of the enactment, its purpose, and the appropriateness of the language used to the supposed purpose, in view of the legislature. There can be no two views as to the general purpose of the act in question. All will agree that its primary and general purpose was to substitute a method of accident insurance in place of common law rights and liabilities for substantially all employees, except such as are by express terms or necessary implication excluded from its operation. It corresponds, so far as general purpose is concerned, with a like act in Massachusetts, of which it has been said in

the case of Young v. Duncan, 218 Mass. 346, "It was a humanitarian measure, enacted in response to a strong public sentiment that the remedies afforded by actions of tort at common law and under the employer's liability act, had failed to accomplish that measure of protection against injuries and of relief in case of accident, which it was believed should be afforded to the workman. It was not made compulsory in its application but inducements were held out to facilitate its voluntary acceptance by both employers and employees." It will be helpful perhaps to keep in mind this general purpose of the enactment when we come to consider the special purposes of the act in exempting certain employees from its operation, and the language employed in their designation.

We pass to the question,—Is the language, used in denoting exceptions to the act, appropriate to the supposed purpose the legislature had in view? A primary and general purpose of the act was, as we have said, to afford a workman a measure of protection against injuries and relief in case of accident, which was denied under existing law. The exception of certain classes of labor in the act is conclusive that it was not intended by the act to extend its benefits to all of the laboring classes. It is only so much of the act as defines the exceptions that we are concerned with in the present inquiry, and the inquiry may be limited still further to only so much of the exceptions as have been held applicable to the present case, and this would limit the consideration to the words "exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer." We have said that the words here employed to designate the class excluded are so far ambiguous, that is to say, lacking in precise and definite meaning, as to be fairly susceptible of more than one meaning. But this does not answer the present inquiry. Whatever else by construction they may be made to embrace, the only question is: Do they with sufficient

clearness, not by forced construction, but allowing the words used their common and popular meaning, include in the exception the employee who meets with an accident while engaged in doing the work he had engaged to do, but which in character is casual and outside the regular course of his employer's business? This is to be resolved by interpretation rather than by construction. Interpreting the meaning of the words used, having regard to the connection in which they are used, we think it apparent that two conditions were in the legislative thought, which, however, because of the conjunction used connecting them, must both concur, neither of itself being sufficient to constitute an exception. We have then the two conditions to consider: (1) the casual employment; (2) the regular course of the employer's business. Allowing the words used in these several phrases their ordinary meaning, do they appropriately designate such employee as was the complainant's husband at the time he received his injury, or are they in any sense contradictory? We think that the expression "casual in character" had a distinct reference to the engagement or contract to render service, and an implied reference, as well, to a distinction that naturally arises when the service stipulated for is outside the regular business of the employer; so that both are included in the exception. The injured employee was by occupation a school teacher, but not for the time being engaged at his regular employment, in consequence of temporary suspension of the schools, when he undertook to complete the silo. The character of his employment may well be regarded as casual considering not only that it was out of the line of his regular employment, and occurred only because of the temporary suspension of that employment, but as well because of the accident, or whatever it was, that had occasioned the suspension of the work on the silo that left it incomplete, and the very limited time that would be required to complete the work for which he engaged. We can conceive of cases where

the contract for the service engaged might be in its character casual, and yet the employment within the course of the business of the employer. To make certain of the exclusion of such, the act further provides "and not in the regular course of the business of the employer." An employee's engagement is casual in character when it comes about by chance, fortuitously, and for no fixed duration of time. In this case it was the concurrence of two fortuitous events that gave rise to the employment, the expiration of the school term and the convenience of the employer for a resumption of work on the silo. There is nothing in the facts to warrant a belief that such contingency was foreseen.

The question remains, was the employment itself in the regular course of the employer's business? In the case of Marsh v. Groner, 258 Pa. 473, we found occasion to place interpretation upon the phrase "in the regular course of the business of the employer," as used in this act. The claim in that case was for compensation for injuries received by a person employed by a married woman who, as owner of her house, was engaged in remodelling it and had employed a workman to do some plastering in connection therewith. While the workman there was so engaged the scaffolding on which he was standing gave way and in the fall he sustained the injury he complained of. It was nowhere suggested that aside from the remodelling of her home the woman sought to be charged with liability had anything of a business character to engage her time and attention. It was contended that the mere circumstances of the owner being engaged in the work of enlarging her home, the time consumed in this work,—the best part of a year,—constituted her a person engaged in regular business and made her liable under the act to any employee who might be injured while engaged upon such work. In the opinion in that case, sustaining the rejection of the claim by the court below, we said: "What gives rise to the question is the indefiniteness and want of precision of meaning

of the word 'business' as it occurs in the act. It is a word which embraces a wide variety of subjects, and being without a technical or precise meaning: excluding any other, it may convey an entirely different meaning in one connection from what it imports when used in another. In such cases when, as here, no help can be derived from the context, and none from the use of the same word in other sections of the act, the interpreter has no other recourse than to the presumption that the word was used in the popular sense, if that be found agreeable, that is, not contradictory to the object and intention of the lawmaker.

"Statutes are presumed to employ words in their popular sense, and when the words used are susceptible of more than one meaning, the popular meaning will prevail. Where the meaning involves no absurdity and is not in conflict with the other parts of the act, it is the only one that can be presumed to have been intended and there is no room for construction: Cooley on Constitutional Limitations, pl. 68. There are few words more current in our speech than the word 'business'; few that include a greater variety of subjects and yet none which, in popular speech, has greater or more marked singleness in denotement. When one's business is the subject of common speech, no one can be in doubt as to the reference. It would be a very exceptional person—we do not know how to otherwise describe him— who would not understand that the reference is to the habitual or regular occupation that the party was engaged in with a view to winning a livelihood or some gain. These objects are necessarily implied when one's business is spoken of......What we have said as to the popular understanding of the word 'Business' is just what Webster defines it, 'Some particular occupation or employment habitually engaged in for livelihood or gain.' The points of difference between the employment the defendant was engaged in and the business which is contemplated by the act and understood in common

parlance, are so marked that the two cannot be confounded; one cannot be the equivalent of the other. The defendant's employment was not in any way dependent on patronage; it had not for its object profit or gain, but simply her own personal gratification and comfort; it was not regular or habitual, but it terminated with the completion of the one thing that engaged her attention at the time, and there is not the slightest indication that she contemplated resuming or doing a like service for another, nor indeed that she had ever attempted anything of the kind before. Other points of difference can readily be suggested, but these are quite sufficient for our purpose. Our conclusion is that the defendant was not engaged in any business within the proper meaning of that term as used in the act, and therefore the claimant when injured was not employed in the manner prescribed by the act. His employment, like that of his employer, was casual in character."

With such understanding of the legislative meaning of the word "business" as it is here employed, it ought not to be difficult to interpret the true meaning of the phrase "in the regular course of the employer's business." With the particular object determined, the regular course of the business can only refer to the experience and custom in the conduct of the business as is of usual, if not daily, occurrence and observation. It is suggested that if such had been the meaning the legislature intended to convey, an apter expression would have been "in the course of the regular business of the employer." We think, on the contrary, such change in phraseology would have made the thought obscure. Not only so, but there can be no warrant for transposition of the terms; the meaning, as it stands, is not doubtful when it is considered that the word "regular," as it is used, does not qualify the word "business" but the course of the conduct of that business; when that is "regular" the condition of the act has been met.

Upon this further review of the act we see no reason why we should not adhere to the interpretation of the

clause we have given in the case above cited. We are supported in this conclusion by recent decisions in other states where a similar law exists in which like language is used, notably in New York, Michigan, and California, in which states the phrase "not in the regular course of the business of the employer" has received judicial interpretation. In Pelton v. Johnson, 179 Ap. Div. 949, N. Y. Sup. 1103, the appellate division unanimously reversed an award and dismissed the claim, in a case in which it was sought to hold a hotel proprietor liable for injuries for a carpenter who was engaged in repairing his hotel. In Holbrook v. Hotel Co., 166 N. W. 876, the Supreme Court of Michigan says: "It would seem that the occasional renovating of rooms of a building or the building itself owned and occupied by the owner as a house, with paint or paper, or both, is not the usual course of the trade, business profession, or occupation of the owner, unless he is himself in the business of painting and decorating." To the same effect is Maryland Casualty Co. v. Pillsbury, 172 Calif. 748. There a machinist was employed by a farmer, merely to repair a tractor, and it was held that the repairing of the tractor was not in the usual course of the occupation of the farmer. In that opinion it is said by the court, it "was no more farm labor [because the work was done on a farm], than it would have been if the machine had been taken to [the machinist's shop] and there repaired."

Because of the views expressed in this opinion we have reached the conclusion that the claim for compensation in this case falls within the exceptions expressed in section 104 of the Workmen's Compensation Act of 1915, P. L. 736; because the employment in which the injury was sustained was casual, and not in the regular course of the employer's business. It was therefore properly refused, and we now so decide. Even though we were to agree with appellant in the contention so vigorously pressed that the act entitled "A supplement to an act entitled 'The Workman's Compensation Act of 1915,'

to exempt domestic servants and agricultural workers from the provisions thereof," approved 3 June, 1915, is unconstitutional,—as to which we express no opinion,— it would be without result in the present controversy, since, leaving out of consideration the supplement, there is that in the general act sufficient to defeat the claim, and it is upon its provisions exclusively that we rest our decision.

Judgment is affirmed.

The foregoing opinion written by Mr. Justice STEW-ART was adopted by the court after his death and is now filed as its opinion.          PER CURIAM.