## Callihan *v*. Montgomery, Appellant.

*Workmen's compensation — Course of employment — Regular course of business—Casual employment—Acts of June 2, 1915, P. L. 736, and June 26, 1919, P. L. 642—Review on appeal—Facts and law.*

1. A person who enlists himself in the army of industrial and business workers must, in order to entitle himself to the benefits of the Workmen's Compensation Act, undertake more than a mere casual or incidental job; he must enter the ranks of those employed in the regular course of business of his particular employer, and, when such a worker claims compensation, it must appear that he was injured in the course of his employment.

2. Since the Act of June 26, 1919, P. L. 642, amending the Workmen's Compensation Act of June 2, 1915, P. L. 736, the appellate court has the entire record before it, but its revisory powers are limited to a determination of the question whether there is evidence to support the findings, and whether the law has been properly applied to them.

3. The determination of the applicability of the provision of the act excluding those whose employment is "casual in character and not in the regular course of the business of the employer," depends, under any given state of facts, upon the interpretation or construction of the act, and is a question of law.

4. In a proceeding for compensation for damages for death of claimant's husband, the question whether there is evidence to sustain findings that deceased was, or was not, doing certain things when injured, is one of law, which may be reviewed to the extent only of deciding whether there is such evidence in the record; but if the evidence appears, the findings thereon are of fact, and are not subject to review.

5. Whether, on the facts found, the deceased was killed in course of his employment, and also whether the employment was "casual in character and not in the regular course of the business of the employer" within the meaning of the act, are questions of law, and, as such, open to review.

6. In order to come within the act, an injury to an employee need not arise out of his employment; all that is necessary is that it occur in the course of that employment. The fact that the employee may have been guilty of contributory negligence is immaterial.

7. The provision in article III, section 301, of the Act of June 2, 1915, P. L. 738-9, is broad enough to include every injury, received on the premises of the employer, during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto.

8. In order to bring a workman within the exception of those employees not covered by the statute, it must appear that the employment was both casual in character and outside the regular course of the business of the employer.

9. The casual employment of one for the performance of an odd job, may occur in conducting a business and still not be within its regular course.

10. The words "regular course" refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as, now and again, repair of the premises or appliances or machinery used therein.

11. A claim by a wife for compensation for the death of her husband will be dismissed on the ground that, while deceased was killed in the course of his employment, such employment was casual and not in the regular course of business of the employer, where it appears that deceased, a skilled mechanic in business for himself, was employed by an oil company to repair an engine, at the deceased's customary charge per hour; that during the progress of the work it was found necessary to take the cylinder of the engine to deceased's shop for reboring; that after waiting a few minutes for defendant's employee to get ready to transport him, deceased, for some undisclosed reason, stepped into an adjoining pump house on defendant's premises, was caught in the machinery, and killed.

12. Such ruling does not exclude from the benefit of the compensation law all those employed at unit, sometimes called "contract," prices, based on quantity of work done, because in many such cases the duties performed are neither casual nor out of the regular course of the business of the employer.

58    CALLIHAN *v.* MONTGOMERY, Appellant.

*Workmen's compensation — Exceptions — Fact and law—Remitting record.*

13. The rule that when the common pleas sustains an exception to an award and reverses the action of the board, it must remit the record to that body for further hearing and determination, concerns only exceptions to findings of fact.

Argued October 5, 1921. Appeal, No. 189, Oct. T., 1921, by defendant, from judgment of C. P. Butler Co., Sept. T., 1921, No. 135, sustaining decision of Workmen's Compensation Board which affirmed award of referee, in case of Ida Callihan v. Noble Montgomery. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Appeal from decision of Workmen's Compensation Board affirming award of referee. Before REIBER, P. J.

The opinion of the Supreme Court states the facts.

Decision affirmed. Defendant appealed.

*Error assigned,* inter alia, was order, quoting it.

*James E. Marshall,* of *Marshall & Watson,* for appellant.—An employee's engagement is casual in character when it comes about by chance, fortuitously, and for no fixed duration of time: Maryland Casualty Co. v. Pillsbury, 172 Calif. 748.

The deceased being a skilled mechanic, owning and operating his own independent machine shop, and being hired on account of his skill to do the work in his own way without any direction from defendant or his agent, was an independent contractor: Smith v. State Workmen's Ins. Fund, 262 Pa. 286.

*James M. Galbreath,* for appellee, cited: Dzikowska v. Superior Steel Co., 259 Pa. 578; Blouss v. R. R., 73 Pa. Superior Ct. 95; Knorr v. R. R., 268 Pa. 172; Dickson v. Hollister, 123 Pa. 421.

OPINION BY MR. CHIFE JUSTICE MOSCHZISKER, January 3, 1922:

Defendant, operating an oil well, employed plaintiff's husband, O. F. Callihan, a skilled mechanic, engaged in business for himself, to repair an engine used to run a pump, under agreement to pay the latter his customary charge of $1.25 an hour for the time required to make the repairs; during the progress of this work it was found necessary to take the cylinder of the engine to Callihan's shop for reboring. After waiting a few minutes for a representative of defendant to get ready to transport him, Callihan, for some undisclosed reason, stepped into an adjoining pumphouse, on defendant's premises, was caught in the machinery and killed. The widow claimed compensation, which the referee allowed; when the award was sustained by the compensation board and the court below, defendant took the present appeal, contending (1st), that at the time of his death deceased was not engaged in the furtherance of the business of defendant; (2d), that Callihan's employment was merely casual; (3d), that he was not employed in the regular course of the business of defendant; and (4th), that he was an independent contractor.

In a broad sense, the Workmen's Compensation Law, Act of June 2, 1915, P. L. 736, was passed for the mutual benefit of employers and employees directly engaged in the regular course of industrial or business life. It is a tacit recognition of the fact that such employees differ from those workers for hire who keep themselves detached, in order to use their labor and abilities in the best markets and most advantageous ways which may from time to time present themselves. The former class of employees, unlike the latter, are not as a rule in a position to seek out and grasp opportunities for advantageously using what little capital they may accumulate; hence, in event of injury, these workers cannot as readily care for themselves and those dependent on them for support. All of which, inter alia, created a public feel-

ing that they were entitled to the protection of such a system as the statute before us sets up, and this brought about its enactment.   The system thus inaugurated guarantees standardized compensation in cases of injury to employees, but one who enlists in the army of industrial and business workers must, in order to entitle himself to the benefits of the act, undertake more than a mere casual or incidental job; he must enter the ranks ·of those engaged in the regular course of the business of his particular employer, and, when such a worker claims compensation, it must appear that he was injured in the course of his employment.

Article IV, section 409, of the Compensation Act (P. L. 1915, p. 751) originally provided that findings of the compensation board on questions of fact were to be final, and certain of our decisions have held that, under this section, the question whether deceased was engaged in the "furtherance of the business or affairs of [his] employer," that is, "in the course of his employment," at the time he received the injury complained of, being one· of fact, the finding of the referee in that regard, when approved by the compensation board, was conclusive (Poluskiewicz v. Phila., etc., Co., 257 Pa. 305, 307; Messinger v. L. V. R. R. Co., 261 Pa. 336, 338; Galligher v. Walton Mfg. Co., 264 Pa. 29, 32; Ferri v. Lenni Quarry Co., 266 Pa. 264, 266); but, in connection with these cases, see Flucker v. Carnegie Steel Co., 263 Pa. 113, 118, and other of our more recent decisions, which point out that such findings are also in the nature of conclusions of law, and are reviewable as such.

At the dates of the decisions in the cases just referred to, the evidence was not before the appellate court (Ambrose v. Coxe Bros. & Co., 266 Pa. 536, 537), the judicial review then being limited to an inspection of the record to ascertain whether the underlying facts duly found adequately sustained the ultimate conclusion appealed from, and whether the judgment was in conformity to

law: McCauley v. Imperial Woolen Co., 261 Pa. 312, 323.

The amendment of June 26, 1919, P. L. 642, 665-6, made material changes in procedure; under article IV, section 427, of this act, where an appeal is had to the common pleas, it is the duty of the board to certify to such court "its entire record,......including the notes of testimony," and it is provided that an appeal may be taken to the Superior or Supreme Courts, to be prosecuted "in the same manner and form and with the same effect as is provided in other cases of appeal" to those tribunals.

Since the Act of 1919, the appellate court has the entire record before it, but its revisory powers are limited to a determination of the question whether there is evidence to support the findings of fact, and whether the law has been properly applied to them; this is somewhat analogous to the power of review in cases of appeal from confirmation of auditors' reports or from decrees in equity: Kuca v. L. V. Coal Co., 268 Pa. 163, 165; Strohl v. E. P. Ry. Co., 270 Pa. 132, 133.

What constitutes injury or death by accident in the course of employment, and who is an employee within the meaning of the compensation law, are defined in article III, section 301, and article I, section 104, of that act, the latter definition expressly excluding those whose employment is "casual in character and not in the regular course of the business of the employer." The ultimate determination of the applicability of these definitions, under any given state of facts, therefore, depends upon the interpretation or construction of the act, and is a question of law. This rule was applied in Flucker v. Carnegie Steel Co., 263 Pa. 113, 118, where we said: "As to the ultimate conclusion, upon which the award rests, that 'deceased met his death from injuries received by accident occurring in the course of his employment with the defendant company,' it is contended by appellant that this presents a mixed question of fact and law,

which may be reviewed on its latter aspect. In a measure, the contention is sound, for since the compensation act undertakes to define the meaning of the phrase 'injury by an accident in the course of his employment' (see section 301, article III, P. L. 738-9), in each instance the question of law is presented as to whether or not the underlying findings of fact [and, since the Act of 1919, the evidence] are sufficient to bring the case within the statutory definition."

A recent and relevant statement of the scope of review in compensation cases is found in the opinion of Mr. Justice Simpson in Stahl v. Watson Coal Co., 268 Pa. 452, 454, as follows: "The question whether or not the vital point [that decedent was injured in the course of his employment, as defined by the act] sought to be deduced from the basic facts, may fairly be inferred therefrom, is one of law and may be reviewed; but, if it can be, the [ultimate] finding is one of fact, and is not the subject of review."

Blake v. Wilson, 268 Pa. 469, 473-6, treats the point, whether an employment was casual and not in the regular course of the business of the employer, as one of law.

The rule applied in the decisions to which we have referred brings us to this determination: in a case like the present, the proposition, whether there is evidence to sustain findings that deceased was, or was not, doing certain things when injured, is one of law, which may be reviewed to the extent only of deciding whether there is such evidence in the record; but, if the evidence appears, the findings thereon are of fact, and are not subject to review. Whether, on the state of facts found, he was killed in the course of his employment, and also whether the employment was "casual in character and not in the regular course of the business of the employer," within the meaning of these several phrases as used in the act, are questions of law, and, as such, open to review.

Before examining into the character and nature of deceased's employment, we shall first consider whether he was killed in the course thereof,—for, if not, there is no necessity to inquire further.

In order to come within the act, an injury to an employee need not arise out of his employment; all that is necessary is that it occur in the course of that employment, and this includes all such injuries, except those caused by the intentional acts of third persons, done for reasons personal to the employee and not directed against the employer, and self-inflicted injuries. The fact that claimant may have been guilty of contributory negligence is immaterial: Dzikowska v. Superior Steel Co., 259 Pa. 578, 583.

The definition, in article III, section 301, of the act (P. L. 738-9), of what is meant by an injury occurring in the course of the employment, expressly provides, inter alia, that it includes "all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employee who, though not so engaged [in the furtherance of the business or affairs of the employer], is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon being required by the nature of his employment."

The provision just quoted is broad enough to include every injury received on the premises of the employer, during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto.

In the case at bar, the employment of Callihan had not ceased when the accident happened; there yet remained the work of reboring the cylinder and replacing it on the engine, which was to be put in running order. The employer undertook to transport him, his tools and the cylinder, to and from his shop. The actual work had ceased only until it could be resumed in the shop, and the employment continued during the time needed for the transportation. It is true there is nothing to show that the employment of deceased required him to enter the pumphouse, but the latter immediately adjoined the place where he was engaged, and the engine on which he was working was used to operate the pump. There may well have been some valid reason, in connection with his work, for entering the pumphouse; but, if not, his stepping into it was merely a temporary digression while waiting the few minutes required for the return of the employer, and, according to our decisions, there was no break in the course of the employment under such circumstances.

In connection with the statement just made, see Flucker *v.* Steel Co., 263 Pa. 113, 119; we there said: "While no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment, and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment."

In Dzikowska v. Superior Steel Co., 259 Pa. 578, 582, an employee, whose regular occupation was in the shipping room of his employer's plant, came from the room during a temporary break in his work and went into a

box car; a few moments after this he was seen running out with his clothing aflame. There was no direct proof of how the unfortunate man caught fire, but it was supposed that he went into the box car to smoke, and, in striking a match, his clothing, which was saturated with oil, became ignited. We held the claimant was entitled to compensation, saying: "This was not a rest period; it was not a period when, by the rules of the employment, the employee was free from the duties of his employment; it was an indeterminate period of waiting for the occurrence of an event which would renew the active operations of the employment, ......; if an accident happened at such a time, there would be no break in the employment, even though the workman is paid by the hour for the time he is actually at work, especially where the accident occurs on the employer's premises or about his property, unless the workman is doing something that is wholly foreign to his employment."

In Knorr v. Central R. R. of N. J., 268 Pa. 172, 175, we held that one furnished with free transportation, to and from his work, was still engaged in his general employment during such transportation, albeit he stopped off a short period on the way home to transact some personal business; and we sustained an award of compensation: see also Blouss v. Delaware, L. & W. R. R. Co., 73 Pa. Superior Ct. 95, 97; Hale v. Savage F. B. Co., 75 Pa. Superior Ct. 454, 459; Messer v. Mfg., etc., Co., 263 Pa. 5, 8; Haddock v. Edgewater Steel Co., 263 Pa. 120, 123.

It is true that in Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, 167, compensation was refused where the deceased deliberately left his regular working place and traveled some distance to another part of defendant's mine, entering an abandoned opening, where he caused an explosion of gas; but there the facts presented indicated that the injured man had voluntarily abandoned the course of his employment, whereas here, as previously pointed out, they indicated the contrary. We con-

clude that deceased was "injured [and killed] by accident in the course of his employment," in the sense of these words as used in the compensation law.

The question remains, however, was the employment, during the performance of which Callahan met his death, "casual in character and not in the regular course of the business of defendant," within the meaning of such phrases in the act under consideration? It will be noticed that, in order to come within the exception of those employees not covered by the law in question, the employment must be both casual in character and outside the regular course of the business of the employer: Article I, section 104, of the Compensation Act, P. L. 1915, p. 736; Tarr v. Hecla Coal Co., 265 Pa. 519, 522-3.

In Marsh v. Groner, 258 Pa. 473, 479, L. R. A. 1918 F (note, p. 275), we held that one employed to do some plastering, in connection with the remodeling of defendant's dwelling, was a casual employee, not engaged in the regular course of the employer's business, and therefore not entitled to compensation. Again, in Blake v. Wilson, 268 Pa. 469, 477, one employed by a farmer, to paint a silo, was held to be a casual employee. An investigation of the outside authorities sustains the position taken by us in these cases, as we shall proceed to show.

In Chicago, etc., R. R. Co. v. Industrial Com., 284 Ill. 573, 120 N. E. 508, it was held that a structural ironworker, engaged for a few days to complete a driveway in connection with a freight house, was engaged in casual employment, the court correctly saying (579): "The legislature certainly intended......to give some meaning to 'casual,' and we assume from a reading of the statute that it intended to give the ordinary common meaning, that is, workmen are engaged in casual employment when they are employed only 'occasionally,' 'irregularly' or 'incidentally' as distinguished them from those employed regularly and continuously."

Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 Pac. 1031, holds that one engaged by the owner of a farm to repair a tractor was a casual employee, the court saying (751) that "casual" is "something that comes without regularity and is occasional and incidental"; in State ex rel. v. Dist. Court, 138 Minn. 103, 107, 164 N. W. 366, a person employed to construct a temporary building to replace one destroyed by fire, on a farm owned by the employer, though not operated by him, was held a casual employee.

Western Union Tel. Co. v. Hickman, 248 Fed. 899, 900, (construing the West Virginia act), where a lineman, temporarily employed by a telegraph company to assist in repairing a portion of its line, was held to be but a "casual" employee, contains an interesting discussion of the subject in hand, pointing out differences, in phraseology, in the English and certain of the American compensation acts, and saying: "This noticeable departure from the language of the English statute indicates a legislative intent to broaden the exception and place it on a different basis; its apparent effect is to make exemption depend, not on the nature of the work performed, but on the nature of the contract of employment. If the hiring be incidental or occasional, for a limited and temporary purpose, though within the scope of the master's business, the employment is 'casual,' and covered by the exception; and so it has been held by the courts of states whose compensation acts have substituted 'casual employment,' or words of the same import, for the 'employment of a casual nature,' found in the English statute: In re Gaynor, 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363; In re Cheevers, 219 Mass. 244, 106 N. E. 861; Aurora Brewing Co. v. Industrial Board, 277 Ill. 142, 115 N. E. 207; Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 Pac. 1031. Thus in the Gaynor Case, supra, in which the subject is discussed at length, the court says that 'casual' is the antonym of 'regular,' 'systematic,' 'periodic,' and 'certain.' These decisions, and the con-

vincing reasons on which they rest, warrant the conclusion that plaintiff was engaged in 'casual employment' when the accident occurred." See also Blood v. Industrial Acc. Com., 30 Cal. App. 274, 275, 157 Pac. 1140.

While the rule adopted in Wisconsin and some other states (see Holmen Creamery Assn. v. Industrial Com., 167 Wis. 470, 471, 167 N. W. 808; F. C. Gross & Bros. Co. v. Industrial Com., 167 Wis. 612, 614, 167 N. W. 809) differs from that in most jurisdictions, the weight of opinion supports the view that the word "employment" refers to the contract of hiring, more than to the kind of services rendered; that if a person is engaged incidentally and occasionally and for a limited and temporary purpose, though the work may be within the scope of the employer's business, he is a casual employee; and that the word "casual," as thus construed, means "incidental." In this connection, it may be noted that the Standard Dictionary gives "incidental" as the only synonym for "casual."

When the tests stated in the authorities reviewed are applied to the circumstances at bar, we have a case of "casual" employment, and, in fact, the court below so found; but it further found that "nevertheless what he [deceased] was doing [at the time of the accident] was in the regular course of the business of the employer," and, therefore, notwithstanding the casual nature of his employment, he came within the Compensation Law. We must next consider the legal soundness of this last conclusion, so far as the finding of the regular course of the business of the employer is concerned.

This court held, in Marsh v. Groner, 258 Pa. 473, 478, that a man employed by a married woman to do plastering in connection with the remodeling of her dwelling, was not engaged in the regular course of the business of the employer because, as a matter of fact, she was not pursuing a business within the meaning of the act; and we there defined one's business to be "the habitual or regular occupation that the party was en-

gaged in with a view to winning a livelihood or some gain." Following this case, we held, in Blake v. Wilson, 268 Pa. 469, 479, that the employment of a person to complete a silo, on which work had been suspended for some time, was not in the regular course of the business of the owner of the farm on which it was constructed, saying: "With the particular object determined, the regular course of the business can only refer to the experience and custom in the conduct of the business as is of usual, if not daily, occurrence and observation. It is suggested that if such had been the meaning the legislature intended to convey, an apter expression would have been 'in the course of the regular business of the employer.' We think, on the contrary, such change in phraseology would have made the thought obscure. Not only so, but there can be no warrant for transposition of the terms; the meaning, as it stands, is not doubtful when it is considered that the word 'regular,' as it is used, does not qualify the word 'business' but the course of the conduct of that business; when that is 'regular' the condition of the act has been met."

The decisions of other jurisdictions do not wholly agree, either in the interpretation of the meaning of the phrases under consideration or as to their application, but the strong trend of opinion coincides with the view expressed in the Pennsylvania cases just referred to.

Holbrook v. Olympia Hotel Co., 166 N. W. 876, 200 Mich. 597, 603 (a Michigan case, in which state the act excludes "any person whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of his employer"), held that a painter and decorator, employed to paint and decorate rooms in a hotel, was not an employee engaged in the usual course of the business of the employer, the court stating: "It would seem that occasionally renovating the rooms of a building or the building itself, owned or occupied by the owner as a home, with paint or paper or both, is not in the usual course of the trade, business,

profession or occupation of the owner, unless he is himself in the business of painting and decorating. No reason can be found for concluding that the owner of a hotel is pursuing his business, within the meaning of the law, when he causes the rooms to be occasionally painted and decorated, although it is usual to have work of that nature done from time to time."

In Blood v. Industrial Commission, 30 Cal. App. 274, 276, 157 Pac. 1140, it was decided that one employed to paint a house was not in the usual course of the employer's business, the court saying: "The contract of employment of Heck by the petitioner to paint his house was casual. It was a mere occasional and incidental contract not constituting or connected with any regular systematic, periodic or certain business." See also Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 Pac. 1031, a case of repairs to a farm tractor; La Grande Laundry Co. v. Pillsbury, 173 Cal. 777, 779, 161 Pac. 988, concerning repairs to the roof of a house; London, etc., Co. v. Industrial Acc. Com., 173 Cal. 642, 645, 161 Pac. 2, where an injured railroad man was fighting fire on a farm, not belonging to the railroad company, and asked compensation from the latter; and Armstrong v. Industrial Com., 36 Cal. App. 1, 2, 171 Pac. 321, where a carpenter was employed at a daily wage to erect a dwelling house. In all of these cases compensation was refused.

State ex rel. v. Dist. Court, 138 Minn. 103, 106, 164 N. W. 366, held that a man employed to construct a temporary building to replace one destroyed by fire, on a farm owned by the employer, though not operated by him, was engaged in work which was "not in the usual course of the trade, business, profession or occupation of the employer"; it is there stated: "The words 'usual course' must be regarded as more restrictive than the language employed in the Connecticut and English acts. ......Assuming the lease obligated defendant to erect a shelter for his tenant's stock......, we may say, in a

certain sense, the erection became his business or duty, but that cannot be the meaning of the word 'business' in this statute; it must......refer to the employer's ordinary vocation, and not to every occasional, incidental, or insignificant work he may have to do......Certainly neither the renting of the farm nor the construction of this shed can be referred to as coming within the 'usual course' of defendant's business or occupation."

In Carter v. Industrial Acc. Com., 34 Cal. App. 739, 740, 168 Pac. 1065, it was held that one employed by a grain dealer to load cars with grain, which had been left on the station platform because of a shortage of cars, was not engaged in the usual course of the business of his employer; it is there said: "The loading was not within the usual business of the employer; the employment must come within the normal operations of the usual and ordinary business of the employer, in order to make him liable. This usual and ordinary business here did not involve the loading of the grain, but embraced simply the purchase and transportation after the grain was loaded upon the cars. In other words, the applicant was casually employed to do work which was not ordinarily and usually done by or under the direction of the employer in the business in which he was engaged." Perhaps the decision in this case goes a little far.

The English cases are of little value in construing the Pennsylvania statute, because of differences in phraseology between the English act and our own. The American compensation acts pretty generally employ the words "regular" or "usual" course of the employer's business. Undoubtedly, there are American cases, such as State ex rel. v. Dist. Ct., 141 Minn. 83, 169 N. W. 488, and others there cited, which construe these words differently from the authorities mentioned in this opinion; but the latter are in the majority and agree more nearly with the view indicated in the Pennsylvania decisions already cited, and here relied on to support the ruling

that Callihan, at the time of his injury, was not employed in the regular course of the business of defendant.

The casual employment of one, for the performance of an odd job, may occur in conducting a business and still not be within its regular course. For instance, emergency repair work on a machine used in the operation of a business can always be said to take place in the course of that business, as all machinery, at some time or other, is bound to need repair; but such work if not of a kind usually performed by or under the control of the person conducting the business, would be outside the regular course thereof. The legislature evidently intended, by the use of the words "regular course," to give them some definite significance and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as, now and again, repairing the premises, appliances or machinery used therein. While repair work may be considered an important incident to any business using machinery, and, in some cases, may enter into the customary operations of such a business (for example, when men are engaged as regular employees for the purpose of keeping the machinery in order), yet the repairs we are here considering were no part of the regular course of the business conducted by defendant, which is producing oil; they represent merely an odd job, incidental to that business, but not part of the work ordinarily done by or under the control of the employer in this particular case. On the other hand, such repairs might well be classed as within the regular course of the business of plaintiff's deceased husband.

As the employment of deceased to repair the machine in question was casual and not in the regular course of the business of defendant, his widow is not protected by the Pennsylvania act.

The view just stated would not exclude from the benefit of the compensation law all those employed at unit, sometimes called "contract," prices, based on quantity of work done, as is argued by plaintiff, because in many such cases the duties performed are neither casual nor out of the regular course of the business of the employer.

While we have overruled appellant's first contention, we have sustained the second and third, which control the case; therefore, it is unnecessary to consider the question whether deceased was an independent contractor.

We take occasion to say that, although many cases from other jurisdictions are mentioned in this opinion, they are cited, not as authorities with us, or to signify our approval of all the conclusions therein reached, but merely to show the trend of opinion on the points under discussion.

What we said in Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, 165, to the effect that "when the common pleas sustains an exception to an award and reverses the action of the board, it must remit the record to [that body] for further hearing and determination (article IV, section 427, Act of June 26, 1919, P. L. 642, 646)," concerns only exceptions to findings of fact, as may be seen by its context and the part of the statute in question there being dealt with.

The judgment of the court below and the award of the compensation board are both reversed; judgment is here entered for defendant.