## Manley v. State Workmen's Insurance Fund.

*John H. Diefenderfer*, for claimant; *Ralph H. Behney*, for defendant.

IOBST, J., June 17, 1929.—This is an appeal by and on behalf of the defendant from the decision and order of the Workmen's Compensation Board rendered March 21, 1929, in which decision claimant was awarded compensation.

Clara E. Manley was engaged as a chambermaid by the Allentown State Hospital at wages of $45 per month and received her board and lodging. She

was so engaged on March 30, 1928, when she became ill at the hospital and complained to the housekeeper of the hospital of her condition. She was put to bed and given a careful physical examination by one of the doctors of the medical staff of the hospital. Dr. Henry I. Klopp, the Superintendent of the State Hospital, and the doctor who made the X-ray examination were of the opinion that she had a beginning tuberculosis. Under instructions of Dr. Klopp, she was brought to the clinic at the Sacred Heart Hospital at Allentown on the afternoon of April 23rd for examination. She was accompanied to the hospital by Dr. Blew, a member of the medical staff of the Allentown State Hospital, and one of the housekeepers of said institution. When about to leave the Sacred Heart Hospital and while still in the care of Dr. Blew and the housekeeper, she fell and fractured her left leg. The referee found that the claimant sustained the injury while in the employ of the Allentown State Hospital and awarded her compensation in the amount of $354.59. Upon appeal, the award of the referee was affirmed by the Workmen's Compensation Board. It is the contention of the appellant that the claimant, at the time she suffered these injuries, was not actually engaged in furthering the business or affairs of her employer. The power of the court is clearly outlined by Chief Justice Moschzisker in the case of Vorbnoff v. Mesta Machine Co. et al., 286 Pa. 199. The court there says: "The act means that, on appeal, the courts may examine the proofs to see whether legally competent evidence is present on the record to support the findings on which the award rests; it does not mean that the evidence may be weighed as to its probative force in fact, and the findings changed by the court according to its belief in that respect. . . . Briefly, it comes to this, the compensation authorities are to decide all questions of fact and the courts are to decide those of law." Upon an examination of this record, we find sufficient proofs to support the findings of fact. The question whether claimant was engaged in the "furtherance of the business or affairs of her employer," that is, "in the course of her employment," at the time she received the injury complained of, has been held as one of fact; but more recent decisions hold that such findings are also in the nature of conclusions of law and are reviewable as such: Callihan v. Montgomery, 272 Pa. 56, 60. "What constitutes injury or death by accident in the course of employment and who is an employee within the meaning of the compensation law are defined in article III, section 301, and article I, section 104, of that act, the latter definition expressly excluding those whose employment is 'casual in character and not in the regular course of the business of the employer.' The ultimate determination of the applicability of these definitions under any given state of facts, therefore, depends upon the interpretation or construction of the act, and is a question of law:" Callihan v. Montgomery, *supra*.

In order to come within the act, an injury to an employee need not arise out of his employment; all that is necessary is that it occur in the course of that employment, and this includes all such injuries, except those caused by the intentional acts of third parties, done for reasons personal to the employee and not directed against the employer, and self-inflicted injuries. The fact that claimant might have been guilty of contributory negligence is immaterial. See Dzikowska v. Steel Co., 259 Pa. 578, 583. In Knorr v. Central R. R. of New Jersey, 268 Pa. 172, 175, the court held that one furnished with free transportation to and from his work was still engaged in his general employment during such transportation, albeit he stopped off a short period on the way home to transact some personal business, and sustained an award of com-

82

pensation. In the case of Blouss v. D., L. & W. R. R. Co., 73 Pa. Superior Ct. 95, 97, Mr. Justice Keller, for the court, says: "Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment. Consequently, no break in the employment is caused by the mere fact that the workman is ministering to his personal comfort or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food or fresh air, or to rest in the shade." While it is true that the claimant's visit to the Sacred Heart Hospital was for the benefit of her health, nevertheless she was directed to go to that particular institution by her employer, who evidently desired her to receive proper treatment so that her services might be retained at the State institution. The choice of the Sacred Heart Hospital was not her own. That institution was the choice of the Superintendent of the State Hospital, Dr. Klopp, who personally supervised her removal to that institution for examination. We must conclude that claimant suffered injury while in the course of her employment.

### Decree of court.

Now, June 10, 1929, the appeal is dismissed. The award of compensation to the claimant by the Workmen's Compensation Board is affirmed and judgment is hereby entered in favor of the claimant and against the defendant in the sum of $354.59, due as of Aug. 14, 1928, and compensation thereafter at the rate of $12.19 a week until there is a change in claimant's disability, or until it entirely ceases, or until she will have been paid the maximum amount of compensation for such disability. Costs to be paid by the defendant.

From Edwin H. Kohler, Allentown, Pa.