Moody v. Susquehanna Collieries Co., Appellant.

Argued October 26, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Henry A. Gordon,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY BALDRIGE, J., December 16, 1932:

The controlling question in this compensation case is: Did the fatal accident occur in the course of the

deceased's employment? The referee found that the deceased met his death on October 30, 1930, while in the course of his employment, and allowed compensation; the board and the court below affirmed the award.

Moody, the deceased husband of the claimant, and Moleskie were contract miners employed in the No. 9 vein in the Richards Colliery of the defendant company, and were the only workmen in that section of the mine. For about a month prior to their death, they had been driving a slant chute from No. 3 breast and had almost reached the point across the pitch, where they were to stop this particular work and start a new breast. Stibitz, a driver in the mine, testified that at about 11 o'clock he asked the deceased, who was working at his regular place of employment, whether they were going to dump any coal and the deceased told him they would be ready to load about 12 o'clock. When this witness returned about 12:15, he found the deceased in a gangway directly under his working place. He estimated the distance between the place he found the deceased and the chute as more than 75 feet but would not state that it exceeded 100 feet. The deceased had cuts in the front and back of his head, his clothing was badly burned and the skin rolled off his hands. He stated that he had fired a shake shot and the gas went off and burned him, and that he thought his "buddy" was killed. The witness said he heard no shot; that the way the deceased was burned indicated to him an explosion; that there was often gas in the mine and that the morning of the accident Moody told him they had to "chase out" the gas in the slant where they were working. According to the testimony of John Allen, the fire boss, who was called by the defendant, the badly burned body of Moleskie, the other workman, was found up this same manway about 70 feet away from the slant. Prior, another witness, called by the claimant, went about

noon to the place where these men were working to get a load of coal. He loaded one car from the chute, which is all it contained, and waited for them to dump additional coal. In about 8 or 10 minutes he heard a shot go off but no coal came out the chute. He then took his car out and asked Stibitz to ascertain the reason more coal was not being dumped. This witness testified that just before that Moody had left his place of work and told the witness he was going to get a box of dynamite and that he would dump coal right away.

The defendant's contention is, that these men, in order to supply quick coal, had left their usual place of employment, and had driven a hole in the middle of a 35-foot pillar between breast No. 2 and breast No. 3 for a distance of about 11 feet, and that the shot kicked back as there was too much coal in front. But the fact-finding body did not accept that theory. Whatever our view may be of the apparent weight of the evidence, it is not controlling. The board and the referee have the exclusive function of determining the facts. This court, in the exercise of its limited revisionary powers, cannot say, as a matter of law, that, in this case, there was insufficient evidence to support their findings.

In Callihan v. Montgomery, 272 Pa. 56, 63, the former Chief Justice, in interpreting what is meant by an injury in the course of employment in Art. III, §301, of the Workmen's Compensation Act of 1915, P. L. 736 (77 PS §431), said "The provision......is broad enough to include every injury received on the premises of the employer, during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his em-

ployment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto." See also Johnson v. Baldwin Loco. Wks., 98 Pa. Superior Ct. 28; Adams v. Colonial Colliery Co., 104 Pa. Superior Ct. 187.

The testimony would support the conclusion that the deceased was injured during working hours on the premises of his employer, at, or at least not remote from, the place where his usual work was performed, when he was endeavoring to remove coal, which was the primary purpose of his employment; that there was no pronounced break in the continuity of his work; nor was there evidence that he was acting in direct violation of the law or contrary to positive orders of his employer. All the essentials for compensation were proven: Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480; Callihan v. Montgomery, supra.

The facts in this case are quite dissimilar from Hunter v. American Steel & Wire Co., 293 Pa. 103, as, there, Hunter was drowned and there was no evidence that his duties, in any aspect, required him to be near the river. In Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, the deceased left his regular place and went to another section of the mine to an abandoned opening and there was an explosion of gas. No duty or business called him to the scene of the accident.

Judgment affirmed.