[Civ. No. 1921. Second Appellate District.—April 13, 1916.]

FRANK BLOOD, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

WORKMEN'S COMPENSATION ACT—CONSTRUCTION OF—CASUAL EMPLOYEE. The Workmen's Compensation, Insurance, and Safety Act does not include a person whose employment is casual and not in the usual course of the trade, business, profession, or occupation of his employer; and one employed to apply two coats of paint to the house of his employer, the employer to furnish the painting materials and the employee to receive a certain amount *per diem*, the employment not being for any definite period of time, but the work being such as would reasonably be done within two weeks, is not entitled to recover for accidental injuries sustained the first day of his employment, resulting in temporary total disability, and the Industrial Accident Commission has no jurisdiction to award compensation for such injuries.

ID.—DEFINITION OF "CASUAL."—The ordinary signification of the word "casual" is something which comes without regularity, and is occasional and incidental, as distinguished from "regular," "systematic," "periodic," and "certain."

APPLICATION originally made in the District Court of Appeal for the Second Appellate District for a Writ of Certiorari to review an award made by the Industrial Accident Commission.

The facts are stated in the opinion of the court.

James R. Choate, and W. C. Shelton, for Petitioner.

Christopher M. Bradley, for Respondents.

CONREY, P. J.—This is a proceeding in *certiorari* to review an award made by the Industrial Accident Commission.

The petitioner, Frank Blood, owned a two-story frame build-
ing at Huntington Park, in Los Angeles County, consisting
of a storeroom below and two flats above, one of the flats
being occupied by the owner. Blood employed one W. F.
Heck, a house painter by trade, to apply two coats of paint
to the house. Blood was to furnish the painting materials
and pay Heck at the rate of $3.50 per day. The employment
was not for any definite period of time, but the evidence
shows that the work would reasonably have been done within
two weeks. During the first day of his employment Heck
was accidentally injured and suffered a temporary total dis-
ability, on account of which an award in his favor was made
by the commission.

On behalf of petitioner it is contended that in making any
allowance whatever the commission acted in excess of its
jurisdiction, because the employment of the applicant for
compensation was "both casual and not in the usual course
of the trade, business, profession, or occupation of his em-
ployer." (Workmen's Compensation, Insurance, and Safety
Act, sec. 14, [Stats. 1913, p. 284].) We think it must be con-
ceded that the employment was not in the usual course of
any business of the employer. There is absolutely no evi-
dence that Blood was engaged in any business which in its
usual course, if at all, called for the employment of house
painters.

Under the British Workmen's Compensation Act of 1906,
the word "workman" "does not include a person whose em-
ployment is of a casual nature and who is employed otherwise
than for the purpose of the employer's trade or business."
As to both clauses within the quotation, it will be observed
that there is a material difference between the language used
in the British act and that of the California statute. Com-
menting upon a very similar difference between the Massa-
chusetts and the British acts, the supreme court of Massa-
chusetts has said that this difference in phraseology must be
regarded as deliberately designed, and that its effect is to
narrow the scope of the Massachusetts act as compared with
the English act. "No one whose employment is 'casual' can
recover here, while there one whose employment is 'of a cas-
ual nature' comes within the act, provided it is also for the
purpose of the employer's trade or business. It is possible
that a distinction as to the character of the employment may

be founded upon the difference between the modifying word 'casual' used in our act, and the words 'of a casual nature' in the English act. The phrase of our own act tends to indicate that the contract for service is the thing to be analyzed, in order to determine whether it be casual, while in the English act the nature of the service rendered is the decisive test. This distinction appears to have been made the basis of decision in *Knight* v. *Bucknill,* 6 B. W. C. C. 160 (1913); W. C. & Ins. Rep. 175; 57 Sol. Jo. 245.'' (*In re Gaynor,* 217 Mass. 86, [L. R. A. 1916A, 363, 104 N. E. 339].) In the same Massachusetts decision it is noted that the ordinary signification of the word ''casual,'' as shown by the lexicographers, is something which comes without regularity, and is occasional and incidental; that its meaning may be more clearly understood by referring to its antonyms, which are, ''regular,'' ''systematic,'' ''periodic,'' and ''certain.'' Tested by this distinction, the contract of employment of Heck by the petitioner to paint his house was casual. It was a mere occasional and incidental contract, not constituting or connected with any regular, systematic, periodic, or certain business.

The supreme court of Massachusetts afterward referred to the Gaynor case as follows: ''In addition to what was said there it may be of importance (in determining whether in a particular case the 'employment is but casual') to have in mind the reason for this limitation upon the class of persons who are entitled to the benefits of the Workmen's Compensation Act. The scheme created by the Workmen's Compensation Act is a scheme of insurance in which the premiums to be paid by the employer are based upon the wages paid by him to his employees. It may have been thought impracticable to work out a scheme of insurance if persons who are only occasionally employed are to be included among those insured.'' (*In re Cheevers,* 219 Mass. 244, [106 N. E. 861].)

It appears to us that the Massachusetts decisions we have referred to are based upon sound reasoning, and may well be applied in the interpretation of our own statute. We, therefore, have reached the conclusion that the employment of the applicant Heck named in the proceedings here under review was of a nature which did not entitle him to compensation for his injury.

In view of the preceding decision, it is not necessary for us to consider petitioner's other propositions; which were (1), that the amount of the award was determined under a section of the statute which is not applicable to the case, and (2) that the award was procured by fraud.

The award under review is annulled.

James, J., and Shaw, J., concurred.