HOLBROOK *v.* OLYMPIA HOTEL CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—EVI-
DENCE—NATURE OF EMPLOYMENT—QUESTION OF LAW.

On certiorari to review an award of compensation by the
industrial accident board, under the workmen's compen-
sation act, to the widow of a painter and decorator who
was accidentally killed while engaged at work for a hotel
company, where the facts are undisputed, the question as
to whether decedent was an employee or an independent
contractor was a question of law.

2. SAME—CASUAL EMPLOYMENT—ASSUMPTION OF RISK—STATUTES.

It is clear that, under the workmen's compensation act (sec-
tions 5427, 5429, 2 Comp. Laws 1915), it was contemplated
that there may be an employment of labor, not in the
usual course of the business of the employer, in which
employment the risks of injury not occasioned by the
employer's fault are assumed by the workman.

3. SAME—CASUAL EMPLOYMENT.

The owner of a hotel is not pursuing his business, within
the meaning of the workmen's compensation act, when he
causes the rooms to be occasionally painted and decorated,
although it is usual to have work of that nature done
from time to time.

4. SAME—INDEPENDENT CONTRACTOR.

Where the undisputed facts show that in doing work for a
hotel company in painting and decorating its rooms from
time to time as occasion required, deceased engaged his
own men and controlled them, doing as much or little
work personally as he pleased, although the work was to
be done to the satisfaction of the manager of the hotel,
who furnished the materials used, and deceased was paid
so much per hour for the men engaged in the work, he
was an independent contractor and not an employee
within the meaning of the workmen's compensation act.

Certiorari to Industrial Accident Board. Submitted
January 9, 1918. (Docket No. 24.) Decided March
27, 1918.

Minnie A. Holbrook presented her claim for compensation against the Olympia Hotel Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant and the Hartford Accident & Indemnity Company, insurer, bring certiorari. Reversed, and award set aside.

*C. H. Ruttle* (*Guy W. Moore* and *Hal P. Wilson*, of counsel), for appellants.

*Warren S. Stone*, for appellee.

OSTRANDER, C. J.   Arthur Lee Holbrook, a painter and decorator, living in Mt. Clemens, Michigan, while doing some work in the hotel of the Olympia Hotel Company, in that city, on September 25, 1916, fell from a ladder, receiving injuries from which he died. His widow, the claimant, seeks to recover compensation under the statute.   The committee on arbitration refused to make an award, but the finding was reversed on appeal.   The industrial accident board found:

"(*a*) That the deceased was an employee of the respondent employer and that the accident which befell him arose out of and in the course of his employment.

"(*b*) That the accident caused his death and that it was the proximate cause of his death, which occurred a few hours after the accident.

"(*c*) That his employment was not casual and that he was not a casual employee.

"(*d*) That the accident occurred and arose out of and in the course of the trade, business and occupation of his employer, the Olympia Hotel Company.

"(*e*) That the applicant was solely dependent upon the deceased and that she is entitled to all of the compensation.

"(*f*) That compensation should be paid by the respondents to the applicant for the period of 300 weeks at the rate of $10 per week."

Plaintiffs in certiorari, in the petition for the writ, allege:

"(*a*) That Arthur Lee Holbrook was an independent contractor and not an employee of the Olympia Hotel Company, and as an independent contractor is not entitled to compensation under the terms of the workmen's compensation act.

"(*b*) That the industrial accident board erred in conclusions of law above set forth and erred in its findings hereinbefore complained of."

It is said in the brief that the point that the employment was casual is waived. To determine whether the deceased was an independent contractor, a mixed question of fact and law, requires examination of the testimony, all of which is returned. This discloses that the Olympia Hotel Company conducts a hotel. That is its business. The building in which the business is carried on seems to be of considerable size. The rooms were renovated occasionally with paint and paper, and it was the practice of the management to have the necessary work done, in one or in several rooms, as the business of the hotel permitted. Usually, at least, there was a period of time in spring and another period in the autumn, during which periods most of the work was done. When necessity demanded or convenience permitted the renovation of a room or of rooms the management secured the services of a painter to do the work, furnishing the material but not the tools for doing it. For a year or more prior to his death, Mr. Holbrook was the man to whom the doing of the necessary work was confided.

Mr. Holbrook carried on the business of painting and decorating, employing men, as many as eight at one time. Occasionally, he contracted to do a particular piece of work for an agreed sum, but most of his work was done, as all of it was for the Olympia Hotel Company, by the hour. He carried on different jobs at the same time, using his men on one or other of them as he pleased, changing them from one job to another. He was carrying on more than one job at

the time he was injured. He went from job to job, superintending his men and himself doing work. He hired the men; they regarded him as employer, looked to him for their pay, and he paid them.

There was no written contract between Holbrook and the hotel company. He was not carried on the payroll as an employee of the company, nor was he otherwise than as stated in the service of the company. There was no understanding that he was personally to do any work. He was to get the work done, had absolute charge of it and of the men employed, the results to be satisfactory to the hotel company. By this latter statement is meant that in practice one, two, or more coats of paint might be ordered in a particular room until it looked good to the management, or a tint or color, use of which had been begun, might be ordered changed to suit the taste of the management. Impliedly, of course, he undertook to do a job in a proper, workmanlike manner. He rendered bills for the work done, which bills specified the total number of hours he and his men had worked, but not how many hours each had worked nor who were the men who worked. Some days Mr. Holbrook worked at the hotel a few hours while his men, or some of them, worked many hours. When he was absent, one of his men was left in charge and direction of the others and the work. Uniformly, by agreement, he charged 35 cents an hour for all work done, whether by himself or others, and he paid his men 30 cents an hour.

There is no dispute about the facts. There is no testimony tending to prove that the hotel company controlled or reserved the right to control the men, or the way in which they should do this work. The case presented by the facts is the common one of the house owner and the painter who do not contract to have done and to do a particular job for a lump sum, but

do contract to have done and to procure to be done certain work at a stipulated price per hour for the time employed. Nothing is more common, nowadays, than for the house owner to engage some man whose business it is to see that certain desired painting, decorating, paper hanging is done in and about his house, or to see that storm houses and storm windows are put up in the autumn and taken down in the spring, when screens and awnings are installed in place of them, or to mow and trim the lawn. If the man once engaged produces the desired results for a fair sum, he is employed, if it is possible, year after year to do the work —to see that it is done. Nothing is more common than to charge and pay for such work a price per hour of time employed in doing it. Often, the man engaged, who is responsible for results, does not do the work himself and is not expected to do it. He has facilities, has men, has tools, and often has several jobs progressing at one time.

The facts being undisputed, the question presented is a question of law. In the opinion given by the board it is said:

"Under the manager of the hotel, Matthews, Mr. Holbrook operated as a foreman for the hotel company covering that class of work. He also acted for the hotel company as a sort of paymaster in paying off the men. He kept their time and knew how many hours each put in. He took the money from his employer, the Olympia Hotel Company, and distributed to each man the part that belonged to each man and kept the remainder for his services. The hotel company and all the men understood the arrangement and were satisfied with it. We have not quoted all of the testimony on the subject of the status of Mr. Holbrook, but we have quoted sufficient to show, in our judgment, that the deceased was not an independent contractor, but that he was an employee of the respondent hotel company. In *Tuttle* v. *Lumber Co.*, 192 Mich. 385, our Supreme Court said:

" 'We are of the opinion that the test of relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.'

"It is said in 26 Cyc., at page 966:

" 'The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished; or, in other words, not only what shall be done, but how it shall be done.'

"In 26 Cyc. p. 1546, an independent contractor is defined as:

" 'One who, carrying on an independent business, contracts to do a piece of work according to his own methods and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.' "

This is based in part, it is assumed, upon a finding of facts which reads:

"If the manager concluded that one coat of paint was sufficient, the painters would go to other rooms to work, and the manager was at liberty to take them from one room and put them on another at any time and to change the men around from room to room as he saw fit. If the manager did not think the rooms were properly painted he would direct them to put on other coats, and in some cases under his instructions the painters put on as many as four coats of paint to a room."

The finding of facts here set out is in effect a finding that the manager of the hotel was in control of the men employed by Mr. Holbrook, directing them in their work, with the right to interrupt it. In this sense, I do not find it supported by testimony. On the contrary, it appears that to Mr. Holbrook suggestions were made and that he or some one whom he left in charge of the work directed the men. And in any event the skill, the art, which the men possessed, probably in different degrees, how paint should be

laid or paper hung—about these things, which, combined with the material furnished, produced the desired results, no one connected with the hotel undertook to control or direct the men or Mr. Holbrook.

The law provides, 2 Comp. Laws 1915, §§ 5427, 5429:

"The following shall constitute employers subject to the provisions of this act: * * * 2. Every person, firm and private corporation, including any public service corporation, who has any person in service under any contract of hire, express or implied, oral or written, and who, at or prior to the time of the accident to the employee * * * have elected to become subject to the provisions of this act" * * *.

"The term 'employee' as used in this act shall be construed to mean; * * * 2. Every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of his employer."

It is clear that the law contemplates that there may be an employment of labor, not in the usual course of the business of the employer, in which employment the risks of injury not occasioned by the employer's fault are assumed by the workman. It would seem that occasionally renovating the rooms of a building, or the building itself, owned and occupied by the owner as a home, with paint or paper or both, is not in the usual course of the trade, business, profession or occupation of the owner, unless he is himself in the business of painting and decorating. No reason can be found for concluding that the owner of a hotel is pursuing his business, within the meaning of the law, when he causes the rooms to be occasionally painted and decorated, although it is usual to have work of that nature done from time to time.

But, assuming that the claimant's decedent was doing work in the usual course of the business of the

hotel company, he was not its employee within the meaning of the law, but was plainly an independent contractor, who, when material was given to him and rooms designated where it was to be used, undertook, by himself and others, with his own apparatus, and according to his own methods, to produce results. It is often helpful in seeking to determine whether, upon certain facts, the relation of master and servant exists, to consider whether the alleged master would be liable to third persons for misconduct of the alleged servant. In two cases, in which such a liability was asserted, it has been held that the alleged servant was an independent contractor upon facts which make the reasoning and conclusions of the court applicable here. These cases are *Gall* v. *Journal Co.,* 191 Mich. 405; *Burns* v. *Paint Co.,* 152 Mich. 613. See, also, *Perham* v. *Roofing Co.,* 193 Mich. 221.

The award is set aside.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.