# LAMONT v. INTERMOUNTAIN REALTY COMPANY

(No. 1893; February 18, 1935; 41 Pac. (2d) 497)

For the appellant, the cause was submitted on the brief of *Ray E. Lee,* Attorney General; *Wm. C. Snow,* Assistant Attorney General, both of Cheyenne; *Chester Ingle,* of Thermopolis and *Chester Ingle, Jr.,* of Casper.

58

For the respondent, the cause was submitted upon the brief of *Fred Wyckoff*, of Thermopolis.

BLUME, Justice.

This is a case under the Workmen's Compensation Law, arising out of injuries received by D. R. Lamont, hereinafter called the workman, while doing some painting in the Emory Hotel at Thermopolis in this state, about January 30, 1933, the workman being injured by a fall from a ladder which slipped a day or so after he began to work. Report of the accident was filed on February 17, 1933, and the Emory Hotel Operating Company was named as the employer. The hotel was managed at that time by one Fred Pattee, who, on March 18, 1933, also reported the accident, naming the "Emory Hotel" as the employer and claiming that the accident was due exclusively to the workman's culpable negligence. Subsequently, however, Pattee agreed that an award for injuries might be made, which was done on July 8, 1933. On March 9, 1934, an application for an additional award was filed. It was found that the Emory Hotel Operating Company was not the real employer. The United States Building and Loan Association, the Intermountain

Realty Company and Fred Pattee were substituted as the real employers. The defendant companies resisted the claim for additional compensation on the ground, among others, that the injuries are not compensable under our compensation law. Pattee did not appear. On May 11, 1934, the case was dismissed as to the United States Building and Loan Association. The court found that the Intermountain Realty Company was the actual employer, and allowed an award of $2000 against it and against the State of Wyoming. Subsequently, on June 18, 1934, the State filed a petition that the award be set aside and for a trial *de novo*. This petition was denied by the court. The appeal herein is on behalf of the Intermountain Realty Company and the State.

The evidence as to the facts relating to the employment is meager. The Emory Hotel, it seems, was conducted as an ordinary hotel. The hotel business is not classified as a hazardous occupation. The workman was a painter by trade, 73 years of age. He did some painting in the hotel named in the summer or fall of 1932, for a period of about four weeks. Subsequently he did some painting for Fred Pattee on a house in Casper. While there he wrote Pattee, that if he had anything for him to do in the hotel (apparently in the line of painting), he would be glad to hear from him. Thereafter he saw a man by the name of Griffin, who told him to go to the Emory Hotel. This the workman did about January 28, 1933. He was told by Pattee to commence with painting the lavatory downstairs. No other directions were, apparently, given. It seems that he was to receive as compensation a dollar per hour. No definite time of employment appears, and it was apparently to last until everything necessary to be painted was completed. The Intermountain Realty Company introduced evidence that Pattee was not au-

thorized to have any work of renovating done on its behalf except the ordinary repair in keeping up the hotel.

1. Various reasons are given why the case should be reversed. It is claimed that the application for an additional allowance came too late under the statute as against the new defendants named. Further, that a motion for a change of judge should have been granted. It is not, however, necessary to pass upon these points. We shall proceed to consider the main point in the case, namely, whether or not the injuries herein are compensable under the workmen's compensation law in this state. Section 124-104, Rev. St. 1931, classes repair of buildings and painting operations among the extrahazardous occupations "if conducted for the purpose of business trade or gain." Section 124-106, 7, provides that a workman means an employee under contract of service or apprenticeship "except a person whose employment is purely casual and not for the purpose of the employer's trade or business." It is the contention of the appellants that this case falls within this exception clause. The respondent relies upon Karos v. Ocenas, 34 Wyo. 357, 243 Pac. 593. In that case Ocenas was engaged in the moving of a house, and employed Karos as a helper. It was contended that inasmuch as this was the only house which Ocenas had undertaken to move, and inasmuch as it would take only a few days to move it, the employment was casual and not for the purpose of the employer's trade or business. It was held that while the employment in that case may have been purely casual, yet the moving of the house was the particular business in which the employer was then engaged, although only for a short time, and that, accordingly, the workman came within the statute. The facts in the case at bar, however, are quite different.

2. The statute, as stated, excepts from the operation of the workmen's compensation laws those whose employment "is purely casual and not for the purpose of the employer's trade or business." Both of these facts must concur. Ocenas v. Karos, supra. Illustrations and discussions of such or similar provisions are found in Schneider, Workmen's Compensation Law (2nd Ed.) Sections 28 and 30 and in notes 15 A. L. R. 735; 33 A. L. R. 1452 and 60 A. L. R. 1195. The term "casual employment" has not been defined uniformly and has given some difficulties. In general it may be said to mean incidental, occasional and not regular employment. The Tennessee statute states that a person who is employed casually is one who is not employed in the usual trade or business of his employer. Gibbons v. Roller Estate, Inc., (Tenn.) 43 S. W. (2d) 198. And in Phister v. Doon Electric Co., 199 Ia. 548, 202 N. W. 371, it was suggested that the "persistency with which the legislature has joined both conjunctively and disjunctively, the 'casual employment' and the employment 'for the purpose of the employer's trade or business' would seem to indicate a legislative purpose to correlate these terms, and to treat them as in some degree synonymous." In any event, to determine whether an employment is casual or otherwise, the nature of the service to be rendered may be taken into consideration. Petrow v. Shewan, 108 Nebr. 466, 187 N. W. 940. In the case of Callihan v. Montgomery, 272 Pa. 56, 115 Atl. 889, speaking of the purpose of the compensation statutes, the court said:

"In a broad sense, the Workmen's Compensation Law * * * was passed for the mutual benefit of employers and employees directly engaged in the regular course of industrial or business life. It is a tacit recognition of the fact that such employees differ from those workers for hire who keep themselves detached, in order to use their labor and abilities in the best markets and most advantageous ways which may from

time to time present themselves. * * * One who enlists in the army of industrial and business workers must, in order to entitle himself to the benefits of the act, undertake more than a mere casual or incidental job; he must enter the ranks of those engaged in the regular course of the business of his particular employer."

A number of cases involving the question of casual employment will hereafter be mentioned. But we may here state that there seems to be no doubt that the employment in the case at bar was casual. It was not regular; the painting was but incidental to the main business of the hotel company. Plaintiff was to be paid $1.00 per hour for his work; he was there for a specific purpose only, and his employment, of course, would end when the painting was finished. And judging from the fact that he had painted in the hotel for a period of four weeks in the previous summer or fall, the work then on hand was probably of limited scope. In fact it is conceded in the brief of counsel for the workman that in this case, the employment was casual. See particularly note 33 A. L. R. 1457, III; Billmayer v. Sanford, 177 Minn. 465, 225 N. W. 426; Consumers Mutual O. P. Co. v. Industrial Comm., 289 Ill. 423, 124 N. E. 608.

Was the employment in the case at bar for the purpose of the trade or business of the employer? The authorities are not uniform. Some of the cases would seemingly answer the question in the affirmative. Johnson v. Hosiery Co., 199 N. C. 38; 153 S. E. 591; National Cast Iron Company v. Higginbottom, 216 Ala. 129, 112 So. 374; Holman Creamery Ass'n. v. Industrial Comm., 167 Wisc. 470, 167 N. W. 808; Dial v. Coleman's Lunch, 217 Ia. 945, 251 N. W. 33. Other cases are to the contrary. One closely in point herein is Holbrook v. Olympia Hotel Company, 200 Mich. 597, 166 N. W. 876. In that case Holbrook was employed by the hotel company to do some painting and paper

hanging and while so employed was injured. The determining question was whether his employment was in the usual course of the business of his employer under a workman's compensation statute which excluded from its operation persons "whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of his employer." The court said in part:

"It is clear that the law contemplates that there may be an employment of labor, not in the usual course of the business of the employer, in which employment the risk of injury not occasioned by the employer's fault are assumed by the workman. It would seem that occasionally renovating the rooms of a building, or the building itself, owned and occupied by the owner as a home, with paint or paper or both, is not in the usual course of the trade, business, profession or occupation of the owner, unless he is himself in the business of painting or decorating. No reason can be found for concluding that the owner of a hotel is pursuing his business, within the meaning of the law, when he causes the rooms to be occasionally painted or decorated, although it is usual to have work of that nature done from time to time."

The Michigan case was cited with approval in Gibbons v. Roller Estates, (Tenn.) 43 S. W. (2d) 198. In that state the statute excepted "any persons whose employment * * * is casual, that is one who is not employed in the usual course of trade, business," etc. It was held that a person employed to help painters in repainting an office building, did not come within the terms of the statute. The court said in part:

"In Murphy v. Gaylord, 160 Tenn. 660, 28 S. W. (2d) 348, 349, the owner of a garage was reconstructing his building. A workman employed about a concrete mixer used in this reconstruction was injured, and made claim under the Compensation Act. The court held that the employer was not engaged in the business or occupation of building, saying: 'The par-

ticular work on which the petitioner was engaged at the time of his injury was an incident of the construction, or reconstruction of a building owned or controlled by the employer, the work on which was being done by the employer apart from and independent of the usual course of his trade, business, profession, or occupation.' The suit was accordingly dismissed. We are unable to take the present case out of the authority of Murphy v. Gaylord, supra. If it be said that conducting an office building was part of the trade, business, or occupation of Roller Estates, Inc., the repainting of that building was as much outside the usual course of trade, business or occupation of the employer as was the reconstruction of the garage in the case cited."

In Oklahoma the statute provides that employment includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain. This is somewhat different from our statute, but the fundamental meaning is, as hereafter more fully stated, probably substantially the same. The law was considered in Meyer & Meyer v. David, 162 Okl. 16, 18 P. (2d) 869. In that case the employer conducted a funeral home, a non-hazardous occupation. The workman repainted it, and while doing so, a ladder slipped, the workman fell and sustained some injuries. Painting presumably was a hazardous occupation under the statute. It was held that the workman did not come within the purview of the compensation law, the court saying in part:

"If the award in the instant case is sustained and the view of the respondent adopted, it would necessarily follow that any citizen, regardless of his business or profession, would come under the Workmen's Compensation Law, in the event he desired to have his home painted, papered, plastered, or repaired in any manner, provided he employed two or more men to do the work. Such was not the intention of the lawmaking body. In the enactment of the statute above quoted, it intended that the workmen's Compensation Act

should apply only to industries, plants, factories, lines, occupations or trades, specified and enumerated in the act, which were being operated and carried on as a business for pecuniary gain."

In the case of Blood v. Industrial Acc. Comm., 30 Cal. App. 274, 157 Pac. 1140, the workman was employed by one Blood to paint an apartment building, one of the apartments being occupied by Blood himself. The injury received by the workman in the course of the work was held not to be compensable under the workman's compensation laws. The court said in part: "We think it must be conceded that the employment was not in the usual course of any business of the employer. There is absolutely no evidence that Blood was engaged in any business which in its usual course, if at all, called for the employment of house painters." The view of the Pennsylvania courts may be gathered from Fedak v. Dzialdowski, 113 Pa. Super. 104, 172 Atl. 187. In that case the workman was employed to assist in remodeling a warehouse and turn it into an apartment house and garage. Holding that the workman did not come within the terms of the law, the court said in part:

"As the work of the deceased was for a limited and temporary purpose, not connected with or constituting any continued employment, he was, within the contemplation of the statute, a casual employee. There remains the question whether the employment was in the regular course of the employer's business. The evidence clearly supports the findings that the work of remodeling this building was an odd job, not a normal operation within the regular business of merchandising in which the defendant was engaged. A man employed to do plastering in connection with remodeling a dwelling (Marsh v. Groner, 258 Pa. 473, 102 A. 127, L. R. A. 1918F, 213), one employed to complete a silo (Blake v. Wilson, 208 Pa. 469, 112 A. 126, 15 A. L. R. 726), a mechanic employed to repair an engine used to run a pump in connection with the operation of an oil

well (Callihan v. Montgomery, 272 Pa. 56, 115 A. 889), a carpenter employed by a contractor to make repairs to a wagon used in his work (Smith v. P. & R. C. & I. Co., 86 Pa. Super. Ct. 136), a painter employed to paint and decorate rooms in a hotel (Holbrook v. Olympia Hotel Co., et al., 200 Mich. 597, 166 N. W. 876), and one employed to paint a house (Blood v. Industrial Acc. Comm. et al., 30 Cal. App. 274, 157 P. 1140), were all held to be not engaged in the regular course of the employer's business."

In Sturman v. Industrial Comm., 203 Wis. 190, 232 N. W. 864, the court said:

"The occasional cleaning and repairing of his own houses did not constitute a trade, business, profession or occupation of the plaintiff (the employer), and the casual or fugitive employment of three or four men for a few days to do such repairing did not constitute employment in the course of a trade, business, profession or occupation of the plaintiff, within the contemplation or purview of the Compensation Act."

In the case of Geller v. Republic Novelty Works, 168 N. Y. S. 263, the court, citing a number of New York cases, said: "A casual engagement of a carpenter by the hour to repair a store or office does not make the proprietor of the store or office one engaged in structural carpentry." In State v. District Court, 138 Minn. 103, 164 N. W. 366, the employer was in the automobile business. He also owned a farm, which he rented. The barn on the farm was burned down, and it became necessary to provide shelter for the live stock. The workman was employed to assist in building a shed and chicken house, and in the course of the work he was injured. The question was whether the employer could be said to be in business in this connection. The court holding that he was not, said in part:

"It was part of defendant's business as a landlord, it is argued, to erect or repair the necessary structures on the farm, no matter what other trade or businesses he also might be engaged in. * * * Assuming that the

lease obligated defendant to erect a shelter for his tenant's stock * * * we may say, in a certain sense, that the erection became his business or duty. But that cannot be the meaning of the word 'Business' in this statute. It must have the same general significance with respect to the work or calling of the employer as the words trade, profession or occupation, hence must refer to the employer's ordinary vocation, and not to every occasional, incidental or insignificant work he may have to do. When we speak of a person's trade or profession we generally refer to that branch of the world's activities wherein he expends his usual everyday efforts to gain a livelihood."

See also, as more or less illustrative herein, Oliphant v. Hawkinsson, 192 Iowa 1259, 183 N. W. 805; Uphoff v. Industrial Board, 271 Ill. 312, 111 N. E. 128; L. R. A. 1916E 329; Billmayer v. Sanford, supra; Bargey v. Macaroni Co., 155 N. Y. S. 1076.

The British Workmen's Compensation act is similar to ours, and reads in part as follows: "Workmen does not include a person whose employment is of a casual nature, and who is employed otherwise than for the purpose of the employer's trade or business." In cases arising under that act the expression is held to cover the normal operations which form part of the ordinary business carried on, and not to include incidental and occasional operations having for their purpose the preservation of the premises or appliances used in the business. In Hill v. Begg, 24 T. L. R. 711, 1 B. W. C. C., it was held that the employment of a window cleaner at irregular intervals, to clean the windows of a dwelling house, is casual employment only and not for the purpose of the employer's business or trade, even though the same person may have been so employed, when required, for a period of some years. And the same rule was pronounced in a case when a window cleaner was engaged to clean the windows of a house and office at regular intervals. In that case

Lord Low said among other things:

"It seems to me that to say that a window cleaner who cleans the windows of a doctor's house, among them being the windows of his surgery or consulting room, is employed for the purposes of the doctor's trade or business, is straining the language of the act beyond all sense and reason."

In the case of Hayes v. S. J. Thompson Co., 6 B. W. C. C. 130, the employers, who were barge-owners, employed the captain to do the annual work of overhauling the barge. The captain, who had a free choice, employed the mate to help him. The mate was injured in the course of the work. It was held that overhauling the barge was no part of the trade or business of the barge owners, and that the mate was not employed by them within the meaning of the compensation law. Cosens-Hardy, M. R., said in part:

"In the present case we are asked to say that this periodical overhauling of the barge, cleaning and so on, was part of the business carried on and undertaken by the barge-owner. I think that is carrying the case a great deal too far. * * *. For instance, take the case of painting; there is scarcely any business at all which does not require periodical painting of the premises. The owner of a factory or mill is not a painter. Painting is not any part of his business. That is not the business which he undertakes, and I think we should be giving an enormous scope to this section if we were to hold that all those incidental operations, although. reasonably incidental to the business, and the business not being capable even of being carried on without them, came within the section."

Of similar import is the case of Spiers v. Steamship Co., 46 S. L. R. 893, 2 B. W. C. C. 205; Alderman v. Warren, 9 B. W. C. C. 507, and Bargewell v. Daniel, 98 L. T. 207.

The provisions of section 124-106, 7, quoted supra, must be read in connection with the provisions of Section 124-104, wherein it is provided that the work

coming within the provisions of the compensation act must be "for the purpose of business, trade or gain." The quoted clause may be somewhat equivocal, but taking it as a whole appears to mean that the work, to come within the law, must be carried on as a business or trade or for the purpose of gain by the employer. That becomes clear, we think, when we come to consider another provision of our statute. We must bear in mind the fact that the only source from which compensation can be paid comes from certain employers mentioned in the statute, and that statute, too, must be taken into consideration in determining the intent of the legislature. Section 124-117, Rev. St. 1931, provides:

"Every employer engaged in any of the occupations herein defined as extra-hazardous, is hereby required to pay into the state treasury for the benefit of the industrial accident fund a sum of money equal to one and one-half per cent of the money earned by each of his employees engaged in such extra-hazardous employment during each calendar month of such employment."

Commenting upon a similar provision in Massachusetts, the Supreme Court of that state said, in Michael Cheevers' Case, 219 Mass. 244, 106 N. E. 86:

"The scheme created by the workmen's compensation act is a scheme of insurance in which the premiums to be paid by the employer are based upon the wages paid by him to his employees. It may have been thought impracticable to work out a scheme of insurance if persons who are only occasionally employed are to be included among those insured."

It must be clear that the legislature intended no workman to come within the provisions of the compensation act, except one whose employer is engaged in an extra-hazardous business as defined by the statute—in this case in the business of painting, Carstons v. Department, 172 Wash. 51, 19 P. (2d) 133. Can a

hotel keeper who occasionally has some painting done in his hotel be said to be in the business of painting? In common parlance, the question would hardly be answered in the affirmative, and the legislature, doubtless, had in mind what people generally understand by the term "business." In Marsh v. Groner, 258 Pa. 469, 478, the court aptly said:

"There are few words more current in our speech than the word 'business'; few that include a greater variety of subjects, and yet none which, in popular speech, has greater or more marked singleness in denotement. When one's business is the subject of common speech, no one can be in doubt as to the reference. It would be a very exceptional person * * * who would not understand that the reference is to the habitual or regular occupation that the party was engaged in with a view of winning a livelihood or some gain."

No hotel keeper has ever paid anything into the industrial accident fund for any painting done or other renovations made in his hotel; nor has he been asked or required to do so by the executive branch of this state. Yet we know that more or less of that must have taken place in every hotel in this state during every year since the existence of the workmen's compensation law, and we may, accordingly, rightly assume that the legislature has approved of the assumption of the executive department that such operations do not come within the purview of the law. To construe the law otherwise would lead to ramifications for which no adequate provision has hitherto been made by the legislature. See Carstons v. Department, supra. Section 124-117 provides that "each employer shall continue to make monthly contributions as above provided" until they amount to two per cent of the annual payroll. But inasmuch as the amount of the contribution to be made each month is based on a percentage earned by the employees during such month, no further

payment would be made after the occasional work of repair or painting would be completed. Further, if the law applies to hotel keepers under the circumstances here disclosed, it would under the same or similar circumstances apply to storekeepers and others not dissimilarly situated, and perhaps even to all owners of a home, as pertinently pointed out in the Oklahoma case heretofore cited, and this, in all likelihood, would require a radical change in our scheme for the payment of injuries thus arising. The truth is, that, in the case at bar, the business or trade of painting was that of the workman herein, as he himself testified, not that of the owner of the hotel, and while the evidence in this case is, perhaps, too meager to say so definitely, it would almost seem that he should be considered in the nature of an independent contractor.

We must, accordingly, hold that the workman in the case at bar did not come within the provisions of our workman's compensation law. The judgment of the trial court is therefore reversed with directions to dismiss the application for additional allowance.

*Reversed with Directions.*

KIMBALL, Ch. J., and RINER, J., concur.