JANOFSKI v. FEDERAL LAND BANK.

1. WORKMEN'S COMPENSATION—INDEPENDENT CONTRACTOR—REPAIRS TO ROOF ON FARM BARN.

Farm tenant of bank which agreed, independently of lease, to allow tenant a maximum amount on the rent due for repairs to barn roof was an independent contractor in effecting the repairs himself and was not entitled to workmen's compensation for injuries sustained while making them, since the job was one that did not contemplate or require the services to be rendered by plaintiff personally, required services of at least two men, bank did not assume or have any right to dictate who assistants would be or have control over hours or

days of employment, plaintiff was to furnish the material and tools and do the job in a specified manner, and in the settlement received something of a profit on the job and it was the only work of its kind plaintiff ever did for the bank.

2. MASTER AND SERVANT—INDEPENDENT CONTRACTOR.

The test of whether relationship of plaintiff to defendant is that of an independent contractor or an employee is the right to control rather than the exercise of control.

3. SAME—SUPERVISION OF CONTRACTOR.

Supervision or control to the extent necessary to effect compliance by the contractor with such terms of his contract is not at all inconsistent with his status as an independent contractor, and such supervision does not indicate a relation of employer and employee.

Appeal from Department of Labor and Industry. Submitted April 8, 1942. (Docket No. 36, Calendar No. 41,901.) Decided June 10, 1942.

Arnold J. Janofski presented his claim against Federal Land Bank, alleged employer, and American Employer's Insurance Company, insurer, for compensation for injuries allegedly sustained while in defendant's employ. Award to plaintiff. Defendants appeal. Reversed.

*M. J. Kennedy,* for plaintiff.

*Alexander, McCaslin & Cholette (E. Dean Alexander,* of counsel), for defendants.

NORTH, J. This is an appeal from an award of compensation to plaintiff by the department of labor and industry. One of the defenses urged by appellants is that plaintiff was not an employee of the Federal Land Bank but instead, plaintiff's relation to the defendant Federal Land Bank in the work he was doing at the time of the accident was that of an independent contractor. If this contention is correct it is conclusive of decision herein, and necessitates reversal.

For the purpose of this opinion we may consider the Federal Land Bank, which will be denominated the bank, as the sole defendant, the other defendant being the insurance company which carried the bank's risk. By reason of a mortgage foreclosure the bank became the owner in fee of an 80-acre farm in Marquette county, Michigan. In April, 1939, the bank entered into a lease of the farm for a term from May 18, 1939, to December 31, 1939, to plaintiff for a cash rental of $75 payable at the expiration of the lease. We think it is a fair inference from the record that the bank owned other properties of like character and that it had employees who from time to time did the work of making repairs on such properties; and the risk arising from possible industrial accidents to such employees was covered by the policy of defendant and appellant, American Employers Insurance Company. Mr. Ernest T. Wilfong was a so-called "field man," among whose duties was that of looking after properties of this character for the bank. To some extent at least his acts in behalf of the bank were subject to the approval of Mr. John Wananen who was a director of the bank. At the time plaintiff moved onto the rented farm Mr. Wilfong said to plaintiff that "he would be around later on to see about getting the barn fixed," the barn roof being in a bad state of repair. In the following August an arrangement was made between Wilfong and plaintiff whereby the latter undertook to furnish the material and do the work of re-roofing the barn at a total cost of not exceeding $50. In this connection plaintiff testified:

"Well, he (Wilfong) figured how much the paper (roofing) would cost and he didn't want the job to run over a certain amount because it had to be approved, he told me, by some higher-up anyway, and he didn't want it to run over a certain amount.

"*Q.* Was there anything said about what you would be paid for your work?

"*A.* Not exactly. He mentioned that the job shouldn't come to more than a certain amount and labor shouldn't come to more than so much a roll either; it could be put on for that amount.

"*Q.* Was anything said about rate per hour you would be paid?

"*A.* Not at that time. * * * He told me exactly what kind of paper to put on and how to put it on. * * * He absolutely didn't want a rough surface; he wanted it smooth, 4-ply smooth roofing. * * * He wanted the laps broken so the laps wouldn't come in the same place, * * * as the joints on the old roof. * * * He said to do it as soon as possible, as soon as I could; he wanted it on for that year."

Plaintiff's testimony shows there was a further talk the first part of the following October between him and Wilfong in which the latter said: "he noticed I hadn't been able to get at the roof yet and put it on. I think that's about all he said that time." Plaintiff further testified: "I was to get credit (on the rent for the farm) for the entire repair job." Later, and on October 25, 1939, plaintiff and his brother began the work of re-roofing the barn. On the following day while engaged in this work plaintiff fell from the barn roof and was quite seriously injured; and it was for this accidental injury that he was awarded compensation.

Prior to his injury plaintiff had worked at the repair job approximately 10 hours. His brother had assisted him, and two of his brothers completed the work after plaintiff's injury. Plaintiff employed a carpenter to assist him in this work, but because of the cost of the carpenter's services at 65 cents an hour, plaintiff testified: "I changed my mind." Plaintiff also testified that a job of this character

required the work of at least two men and further that: "He (probably meaning Wilfong) was going to pay any man that was helping me the same as I got paid." In response to the question as to who fixed his rate of pay at 30 cents an hour, plaintiff replied "Federal Land Bank;" but evidently this rate was used by reason of a written memorandum having been given to plaintiff by the bank which in the record appears as follows:

"Plaintiff's exhibit 3, says 16 rolls 4-ply number 65 roll roofing, 2.10, 33.60. Then it says labor at 30¢ per hour. Tenant to furnish material not to exceed prices above stated, and to furnish labor at 30¢ per hour for repairs. Barn to be completed by November 15, 1939, and cost of material and labor to be allowed as credit for part of payment of rent."

Plaintiff purchased on his own account the roll roofing to be used on this job at $2 per roll and paid for same from his own funds. For furnishing the materials and for the work done by plaintiff and others on this repair job, the bank gave him credit on the rental of the farm in the amount of $49.83, seemingly made up of a labor charge of 40 hours at 30 cents per hour, $12; and the balance of $37.83 being charged for material used. The ladders and other tools used in doing this repair job were furnished by plaintiff.

Without reciting other details of the record it is sufficient to note it conclusively appears that the agreement or arrangement entered into between plaintiff and defendant bank was one that did not contemplate or require the services to be rendered by plaintiff personally, but, instead, it was a job of such a character that it necessitated the services of at least two men; that the defendant bank did not assume or have any right to dictate who these as-

sistants would be or have any control over the hours of employment or the days when the work was to be done; that the undertaking provided for doing a certain specified job in a specified manner, but plaintiff was to furnish the material and the tools; that plaintiff was to do this job within a maximum price stated and was to have credit for the amount finally due him upon his farm lease. · And it may be further noted that this work was in no way related to nor a part of the lease under which plaintiff occupied the farm. Instead it was an independent job to be performed by plaintiff who, so far as the record shows, had not theretofore nor did he thereafter do any work for the defendant bank of a like character. In the final settlement plaintiff evidently realized something of a profit on the materials he used. The only concern which the defendant bank seems to have had in this undertaking was to inspect the job after it was completed and to determine that it was acceptable.

Under the circumstances of this record decision is controlled by determination of the legal question as to whether plaintiff did this job as an employee of the defendant bank or as an independent contractor. While it may be said that no one of the circumstances attending the doing of this job is conclusive of the relationship between these parties, nonetheless we do conclude that taken as a whole the circumstances under which it was agreed plaintiff should repair the barn and the manner in which the task was accomplished are conclusive that the relationship was not that of employer and employee; but, instead, in repairing this barn plaintiff operated as a contractor doing a particular job. In so concluding we are mindful of testimony given by Wilfong and another representative of the bank as to their claimed right to control the manner in which

this repair work was to be done, et cetera; and we also note that the test of the relationship as to being an independent contractor or an employee is the right to control rather than the actual exercise of control. *Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385 (Ann. Cas. 1918 C, 664). We have passed upon cases which were quite identical in principle, and which with the substitution of names would apply quite literally to the instant case. We held that the plaintiff was an independent contractor in the following case:

"It seems to be too clear to require argument that the relation of Irwin (the bank) and Woodhall (Janofski) was not the relation of master and servant. Nothing that Woodhall (Janofski) could have done would be imputed to Irwin (the bank). *Gall* v. *Detroit Journal Co.*, 191 Mich. 405 (19 A. L. R. 1164). Impliedly the contract was that Woodhall (Janofski) would do the job, selecting and furnishing proper material therefor, in a workmanlike manner. The reserved right of interference with the actions of a servant which the master possesses is negatived by all the testimony touching the agreement between them. *What one or the other party to such a contract, the contract being established, says he could have done, his conclusion about his rights in the premises, does not affect the question.* \* \* \* It is evident that when Woodhall had agreed with Irwin to do a job of (plaster) patching such as this was, he undertook to do everything connected therewith, to furnish help and materials; to do and complete a good job according to his own method. He could charge for it in terms of hours of labor and cost of material or in terms of a charge for the completed work." *Woodhall* v. *Irwin*, 201 Mich. 400.

"Supervision or control to the extent necessary to effect compliance by the contractor with such terms of his contract is not at all inconsistent with his

status as an independent contractor, and such supervision does not indicate a relation of employer and employee.'' *Eberly* v. *Sanders Lumber Co.*, 282 Mich. 315.

See, also, *Hanisko* v. *Fitzpatrick Brothers*, 232 Mich. 593; *Odle* v. *Charcoal Iron Co. of America,* 217 Mich. 469; *Holbrook* v. *Olympia Hotel Co.*, 200 Mich. 597; and *Carleton* v. *Foundry & Machine Products Co.*, 199 Mich. 148 (19 A. L. R. 1141).

Under this record a question of law is presented as to whether plaintiff was an employee of the bank or an independent contractor. The department of labor and industry was in error in holding plaintiff was an employee, and for that reason the award must be vacated. Costs to appellants.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST J., took no part in this decision.