**SMITH, Plaintiff-Appellee, v BROCKAMP, Defendant-Appellant and BROCKAMP, Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6845.   Decided November 3rd, 1947.

Joseph I. Williams, Cincinnati, for plaintiff-appellee.
   J. Aaron Meyer and B. Wm. Heidkamp, both of Cincinnati, for defendant-appellant.

## OPINION

By ROSS, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Hamilton County awarding the plaintiff compensation from the Ohio Industrial Compensation Fund.

The plaintiff was for some time a casual patron of the tavern and cafe operated by the defendant Engelbert Brockamp, who employed the wife of plaintiff to attend bar and clean the premises. The mother of this defendant operated a kitchen in connection with the cafe and was the owner of the real estate upon which the cafe was located. She was made a co-defendant with Engelbert Brockamp, but was dismissed during the receipt of plaintiff's evidence, and the plaintiff has taken no appeal from this action of the Court.

The plaintiff at various times voluntarily and without compensation from the defendant aided his wife in her several tasks about the cafe.

The defendant decided upon an addition to his tavern and cafe and talked to the plaintiff about design and cost. The plaintiff drew up a sketch or plan of what he considered appropriate.

The plaintiff for some six years prior to this time had been a carpenter's helper.

Later, the defendant consulted an acquaintance, Melville Zaeh, whom he had known for thirty years, and who was engaged in the business of "excavating, grading, sodding, and concrete work."

The result of these conferences was that the defendant employed Zaeh and the plaintiff to proceed with the work. Other employees from time to time assisted in the work of building the addition to the cafe.

There can be no question but that the defendant employed the plaintiff directly and that more than three persons were regularly employed by defendant in the work until its completion.

The plaintiff was injured during the course of such employment and as a direct result thereof.

The plaintiff at first asserted a claim against Zaeh as his employer. This claim was allowed by the Industrial Commission and Zaeh was sued in order to recover the award from the Industrial Commission. This action was brought by the State on the relation of the Attorney General and resulted in a verdict in favor of Zaeh. Thereupon, the instant claim was

filed and rejected by the Industrial Commission, upon which an appeal was duly taken to the Common Pleas Court of Hamilton County, resulting in a verdict of award in favor of the plaintiff, upon which judgment was accordingly rendered. The instant appeal upon questions of law is from this judgment.

Only one assignment of error requires comment here. That is the one predicated upon the contention of the defendant that the plaintiff was a "person whose employment is but casual and not in the usual course of trade, business, profession, or occupation of" the defendant.

The plaintiff was employed to assist in the erection of this addition to the defendant's tavern and cafe, the operation of which being the defendant's business. The plaintiff had not been employed by defendant before in any capacity and there is no indication that either the plaintiff or Zaeh or any of their co-workers would ever be employed again by the defendant after the completion of the addition.

The addition to the cafe was to be used as a "beer hall" and would result in the expansion of the premises used by the defendant as a "tavern and cafe." Previously, the ground on which the addition was erected had been used as a "garden" in which the patrons of defendant sat and partook of refreshments. It was at first intended merely to enclose this space, but later, defendant, upon consulting with the plaintiff and Zaeh decided upon a permanent structure in which cement block was used. The result of the erection of this addition was to enclose the space in which the business of defendant was conducted and to make the premises more attractive to patrons.

The defendant states:

"* * * I got figuring out on enclosing the garden, just make a shelter over it—like other years, if I had a garden full of people and rain came up why I would be shot for the evening.

"Q. And where was that garden?

"A. In the rear of 5908.

"Q. In the rear of your tavern? A. That's right."

And again the defendant states:

"Q. And you had used that space in the rear as a beer garden before putting this building up?

"A. That's right.

"Q. And you considered at one time putting a roof on it for a beer garden?

"A.   That's right.

"Q.   And then you enclosed the building, and why did you do that?

"A.   Because the contractor, he told me, he says, 'If you make a substantial building it could be used all the year around.'

"Q.   Then you carried out his suggestion?

"A.   Carried out his suggestion, yes."

In **State, ex rel. v Christen, 128 Oh St 56,** it is stated in the syllabus:

"1.   **Secs. 1465-60** and **1465-61 GC,** are in pari materia and must be construed together.

"2.   Workmen are regular employees, within the purview of §§1465-60 and 1465-61 GC, so long as they are hired to do work in the usual course of the trade, business, profession or occupation of the employer.

"3.   In order that a person's employment shall be deemed to be in the usual course of the trade, business, profession or occupation of the employer, it must be employment for work of the kind required in the business of the employer and it must be in conformity to the established scheme or system of the business. Such scheme or system comprehends the nature of the enterprise, its organization, its personal requirements and its methods of operation. The time for which such employment has continued is not controlling."

Paragraph 2 of §1465-61 GC, provides:

"Every person in the service of any person, firm or private corporation, including any public service corporation, employing three or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

**Sec. 1465-60 GC,** provides in part:

"The following shall constitute employers subject to the provisions of this act:

*   *   *   *

"Every person, firm and private corporation, including any public service corporation, that has in service three or more

workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written. * * *"

The defendant Brockamp did not consider himself included within the purview of this act and consequently did not comply with the requirements applicable to employers described therein.

In the Christen case, the employer was engaged in the general business of painting and the employee was employed as a painter, so that the factual situation in Christen case and the instant case are not identical.

However, as pointed out in the Christen case, at page '58 of the opinion, §1465-61 GC, was amended in 1917 by substituting the conjunctive "and" for the disjunctive "or" in the last clause, so that the section reads as quoted.

Certainly, the legislature must be considered to have made such change with a definite design to change the effect of the language used, and it seems entirely clear that in order to take an employee out of the application of the act, it must not only appear that the employment was casual, but also, that such employment was not "in the usual course of trade, business, profession or occupation of his employer."

This is the conclusion expressed in the Christen case and sustained by the authorities therein noted.

Some of these cases as well as others illustrating the application of the exclusion will be noted hereinafter, and a rather definite line of cleavage developed in differentiating between facts justifying a conclusion, including or excluding the employee from coverage of the act. By way of illustration, if a lawyer, whose office was not maintained in his residence, should employ three or more workmen to build an addition thereto, the employees so engaged would not be included in the coverage of the act, but, if on the other hand, a physician, who used his home for the purpose of practicing his profession as well as a residence, employed three or more workmen to build an addition thereto, which would increase the facilities of his practice, then such employees would be included in coverage.

In the following cases the Courts have attempted to distinguish facts entailing liability upon the employer from those excluding the employee from coverage because of employment casual in nature and unconnected with the usual occupation of the employer.

In Caca v Woodruff, 70 Ind. App. 93, the employee, a carpenter, was employed at various times to make repairs and build additions to the mill of the employer engaged in the business of operating a mill in which wheat, corn, and feed stuffs were ground. The "work consisted in taking the roof off a shed or driveway, which was a part of the mill building, and constructing a room above one end of the driveway, in the lowering of a floor, in building a stairway and changing and hanging a door, and in constructing bins for holding grain, flour, meal and feed stuffs." The work occupied between two and three weeks time. The employee was injured during the prosecution of this work. The court held:

"Though section 9 of the Workmen's Compensation Act expressly excepts casual laborers from the compensatory provisions of the law, yet, under section 76, clause b, of the act, an injured workman may recover compensation, even though his employment is casual, if the employment is in the usual course of the employer's business.

"Since additions and repairs to buildings and machinery are necessary to the proper conduct of the milling business, the constructing and making of such additions and repairs is employment 'in the usual course of the employer's business' within the meaning of section 76 of the Workmen's Compensation Act, defining 'employee.'

"A carpenter engaged at different times in building an addition, and in making repairs, to a mill under the supervision of the owner, for which he was paid weekly at a fixed price per hour, the owner furnishing materials, was an 'employee' within the meaning of section 76 of the Workmen's Compensation Act, and not an independent contractor, such work being in the usual course of the milling business."

Miller & Lux, Inc. v Ind. Acc. Commission, 32 Cal. App. 250. The employer was a corporation engaged "in many and diverse occupations" in connection with the operation of the business of "wholesale butcher." It had numerous properties, upon which buildings from time to time were constructed, improved, and repaired. Carpenters were constantly employed. The applicant had been employed for some two months before he was injured while acting as a foreman of carpenters engaged in such work. Held: The employment was not casual.

Dyer v James Black Masonry & Const. Co., 192 Mich. 400. The employee was injured while engaged in taking care of glass as it was unloaded at the place of business of the em-

ployer, which was being glazed. The work occupied a considerable time. The employment was held not to be casual.

Scott v Payne Bros., Inc., 85 N. J. L. 446. The employee was injured while engaged as a structural steel worker upon a building in course of construction. The employer was the constructing contractor. Held: The work was not casual.

In Mullen v Walker, et al., etc., 105 N. J. L. 199, it is stated in the syllabus:

"Plaintiff had been employed to assist in unloading a carload of flour. After he had finished the work he was paid off and told that the employer would have another carload in a few days. Upon being asked if he would care to work in unloading such other car when it came in, he replied that he would if he had then no other regular employment. When the other car arrived word was sent to plaintiff and having no other regular employment, he set to work and was injured while moving the flour. Held, that such employment was not a 'casual employment' within the purview of the Workmen's Compensation Act."

In Holmen Creamery Ass'n, et al. v Industrial Commission of Wisconsin, 167 Wis., 470, it is stated in the syllabus:

"1. The term 'employment,' as used in sub. (2), sec. 2394-7, Stats. 1915, refers to the nature or kind of service rendered rather than to the nature of the contract of hiring.

"2. An employment which 'is but casual,' within the meaning of said statute, is one which is only occasional, or comes at uncertain times, or at irregular intervals, and whose happening cannot be reasonably anticipated as certain or likely to occur or become necessary or desirable.

"3. Repairs upon a building used for business purposes are an essential part of the business and, though they come at irregular intervals and the exact time when they will be needed cannot be foretold, are to be anticipated, provided for, and made when necessary or convenient; hence, although a workman who was injured while making repairs on a creamery building had been, on that as on several previous occasions, specially hired for the repair work only, his employment was not merely 'casual,' within the meaning of sub. (2), sec. 2394-7, Stats. 1915."

In Gotchy v North Dakota Workmen's Compensation Bureau, 49 N. D., 915, it is held in the 5th paragraph of the syllabus:

"Where the deceased, a carpenter, was intermittently employed by an elevator company in doing its carpenter work and general repair work and prior to the time of his injury had been engaged for some forty days in constructing a unit or leg for an elevator and doing some other general repair work, and where such carpenter was employed by the hour and his methods of prosecuting the work were in some respects subject to the control of the elevator company, it is held, for reasons stated in the opinion, that the decedent, at the time of his injury, was an employee of the elevator company engaged in the course of its business."

Benoy v Torkelson, 161 Minn., 223. The employee was engaged to erect a potato warehouse as a carpenter and to oversee it when built. The employer was engaged in the business of buying and shipping potatoes as a commercial enterprise. Held: Employment not casual. It is stated in the opinion at page 225 that "It is not necessary that a new business be in operation, it is sufficient if it appears that the work in which the injured employee was engaged was in erecting the necessary structures for the business, trade, or occupation the employer had concluded to carry on."

In Blood v Industrial Accident Commission of the State of California, 30 Cal. App., 274, it was held that:

"* * * one employed to apply two coats of paint to the house of his employer, the employer to furnish the painting materials and the employee to receive a certain amount per diem, the employment not being for any definite period of time, but the work being such as would reasonably be done within two weeks, is not entitled to recover for accidental injuries sustained the first day of his employment, * * *"

In Armstrong v Industrial Accident Commission, et al., 38 Cal. App., 1, it was held:

"A carpenter employed for about three months on day wages in the erection of a dwelling-house for his employer is entitled, under the Workmen's Compensation Act, to compensation for injuries received, since his employment is not both casual and out of the usual course of the trade, business, profession, or occupation of his employer."

In the opinion, at page 4, the Court distinguishes the Blood case upon the basis that that case dealt with repairs to an

existing building. This same Court in **Miller & Lux, Inc. v. Industrial Accident Commission** (see, page 3 opinion) sustained coverage where claimant was an employee engaged to construct a fourteen-room cottage. The Court seems to draw a distinction between repairs and initial construction.

In Nebraska National Guard v Morgan, 112 Neb., 432, the claimant was injured while preparing a certain area for an encampment of the National Guard. At page 436 of the opinion, the Court say:

"It would seem to require no argument to support the proposition that the National Guard has no trade, business, profession or occupation within the meaning of those terms as used in the statute, as they have reference to industrial concerns, and the theory of employees' compensation acts is that the losses occasioned employees through accident shall be charged to the industry the prosecution of which is the occasion of the service. But it is not illogical to say that the holding of an encampment required by law is a part of the business or occupation of the National Guard; and the preparation of the ground in the interest of the comfort and health of the militia while performing their duties is a proper and necessary work connected therewith."

Fiorot v Braide, et al., 279 Pa., 247, holds in the syllabus:

"1. Compensation will be allowed for the death of an employee of a butcher killed while felling trees, where it appears that the employer needed the wood to be secured from the trees for use in his butcher shop for heating and other purposes in connection with his business.

"2. Such employment is not casual within the meaning of the Workmen's Compensation Act, but is within the regular course of business of the employer."

In Johnson v Choate, 284 Ill., 99, the defendant was engaged exclusively in making railway steel castings. It entered into an agreement with an independent contractor to wreck a smokestack on one of its buildings, the decedent of claimant was employed by the independent contractor to assist with others in wrecking the stack, the decedent was a stack wrecker. The independent contractor failed to comply with the compensation act, thus imposing his liability, if any, upon defendant for the death of decedent who lost his life while wrecking the stack. It was claimed the employment of dece-

dent was casual. The Court said there was no evidence the job would only last for three or four days, and the mere fact the employment is for one job only, does not make the employment casual. Coverage was sustained.

No mention has herein been made of the numerous cases in which coverage has been decreed where the employment is in the actual occupation of the employer. Of such is the case of **Industrial Commission of Ohio, et al. v Kukes, 53 Oh Ap 309,** in which the owner of an orchard was held to be an employer within the act, although the claimant was employed to pick apples for a short time during the season.

See, also: **Schneeberg v Industrial Commission of Ohio, et al., 67 Oh Ap 499.**

The Christen case, supra, is the same type of case.

The Court of Appeals of the Eighth District of Ohio recently affirmed, without opinion, (as far as can be ascertained) a judgment of the Common Pleas Court of Cuyahoga County awarding compensation to a claimant whose decedent was killed while working upon a chapel, and under direct employment of a building committee, appointed by a church congregation, to erect such new building.

Now, in the instant case, the defendant was engaged in the business of operating a tavern and cafe, to which his patrons came for refreshment and pleasure. He provided tables and chairs for their convenience. For some time, he had employed a plot of ground in the rear of his establishment as a "garden" in which tables and chairs were placed and used by his customers. When the weather was inclement his patrons either left the premises or were driven indoors. In order to increase the capacity of the premises used as tavern and cafe, he employed the claimant and others to construct a substantial structure as an addition to his then existing establishment. While this was a unique, isolated, and casual enterprise, and, as far as appears from the record, the employment of the claimant was merely for the duration of this particular undertaking—the construction of the addition was one which could be expected to occur in the usual and natural expansion of the defendant's business.

Such a business either wanes and fails, or it grows and expands. The usual course of business, therefore, involves expansion and the construction of additions to the structure originally occupied. The normal increase in business is often taken care of by a change to a larger location. In this case, the mother of defendant owning the premises, this change was taken care of by an addition to the premises.

One other decision requires consideration. This is the case of **Holden v The Beebe Fuel Co., et al., 60 Oh Ap 430.** The appellant asserts that this case is an authority justifying reversal of the judgment of the trial court. In this case it is held:

"A painter who contracts with a retail coal dealer to paint the buildings leased and occupied by the latter in its business, the painter agreeing to furnish all equipment and to do the specific job of painting, the coal company neither reserving nor exercising any specific control over the work, the manner of doing it, the hours per day to be employed, or the handling of the equipment, and when completed the employment is to end, is an independent contractor in the 'casual' employment of the coal company within the terms of §1465-61 GC, and is not employed in the 'usual course of business or occupation' of the company so as to be classed as an employee and, when injured while performing the contract, is not entitled to the benefits of the Workmen's Compensation Act."

In the first place it is apparent that the conclusion of the court is predicated upon the premise that the claimant was an independent contractor and does not come within the definition of an employee as found in the statutes. His son engaged as his helper and co-worker was not employed by the defendant, but, on the contrary, was employed by the plaintiff to aid him in carrying out his contract with the defendant.

However, Judge Overmyer states in his opinion:

"Following the Ohio rule of interpretation as laid down in the Christen case, which has not been overruled but consistently followed, we hold that appellee's employment was but casual and was surely not in the usual course of the employer's business, for the employer was a coal dealer and was not even the owner of the properties to be painted; it furnished none of the material or equipment to do the work; the appellee was to do this specific job of painting the several buildings, and when completed the employment would end; it was a single job, for a short period, under a written contract, and of a type of work in no way required or connected with the business of the fuel company but purely incidental, like the repair of a roof, the laying of a sidewalk or any incidental occasional and irregular work connected with the repair or maintenance of the buildings and properties of the coal dealer. To adopt

appellee's contentions would open up a field clearly not within the contemplation of the creators of the act."

This authority might be dismissed with the comment that the disertation upon casual employment is pure obiter, the court having decided that the employer was an independent contractor. The opinion of Judge Overmyer requires more than such summary treatment. The court relies upon the case of Lamont v Intermountain Realty Co., 48 Wyo., 56, (41 P. (2d) 497) and the authorities therein noted, and makes no reference (with the exception of the Christen case) to the authorities hereinbefore noted in this opinion, or to many others in which the Lamont case is later discussed.

In Tokash v General Baking Co., 349 Mo. 767 (163 S. W. (2d) 554), the case under consideration was one where the employer was engaged in the baking business and employed the claimant as a painter. The court held:

"The evidence authorized the finding of the Commission that the baking company had a maintenance department and regularly painted its building in the usual course of business. The employment was not casual."

On page 772 of the opinion the Court cites the Lamont case, among others, with the comment that "these cases are distinguishable on the facts."

In Garrison v Gortler, etc., 234 Ia., 451 (13 N. W. (2d) 358), it was held:

"The proprietor of a grocery store employed a workman to repair a leaky roof of the building. The workman fell from a ladder and was injured. Held that at the time of the injury the workman was a person whose employment was for the purpose of the employer's trade or business and under section 1421, C., '39, was compensable."

At page 555 of the opinion he Court in considering the case of Pope v Safeway Stores, Inc., 54 Wyo., 266 (91 P. (2d) 58) noted the Lamont case, stating: "The appellant in that case relied largely upon Lamont v Intermountain Realty Co., 48 Wyo., 56, 41 P. (2d) 497. The court distinguished it from the Pope case, and noted that the painter who was injured while painting the inside of a hotel 'was * * * almost to be regarded as an independent contractor.' "

In the opinion in the Garrison case the Court has commented upon almost every case dealing with this question. It amounts to a digest and review of all pertinent cases.

The case of Meyer v Davis, 162 Okla., 16 (18 P. (2d) 869) noted at page 435 of the opinion in **Holden v Beebe Fuel Co., 60 Oh Ap 430, supra,** was a case construing an Oklahoma statute involving hazardous employment.

It is the conclusion of this Court that the great weight of authority, as developed from these cases, and the many cases considered therein, is that the employee in the instant case cannot be classified as a "person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

The judgment is affirmed.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.