**CARDILLO et al. v. MOCKABEE.**
**No. 7172.**

United States Court of Appeals for the District of Columbia.

Argued Dec. 5, 6, 1938.

Decided Jan. 16, 1939.

David A. Pine, U. S. Atty., Allen J. Krouse, Asst. U. S. Atty., James A. Willey, Z. Lewis Dalby, Charles T. Branham, and W. E. Boote, all of Washington, D. C., for appellants.

James A. O'Shea, John H. Burnett, and Alfred Goldstein, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

This is an appeal from a decree of the United States District Court enjoining the enforcement of a compensation order.

By Act of May 17, 1928,[1] Congress made the provisions of the Longshoremen's and Harbor Workers' Compensation Act[2]—with certain exceptions—applicable to employees in the District of Columbia. One of the exceptions is stated as follows:

"This Act [chapter] shall not apply in respect to the injury or death of * * * (4) an employee engaged in * * * any employment that is casual and not in the usual course of the trade, business, occupation, or profession of the employer." D.C.Code 1929, T. 19, § 12.

The questions for decision here are: First, was appellant Fenner an "employee" in the sense in which that term is used in the Compensation Act? Second, if so, was his employment casual and not in the usual course of the employer's business?

The deputy commissioner found as facts: that on the 1st day of May, 1937, claimant was in the employ of one Mockabee in the District of Columbia; that claimant was performing service for the employer as a tank cleaner at one of two gasoline stations owned and operated by the employer; that he sustained personal injuries when an explosion occurred in the tank; that the employer had notice of the injury and furnished claimant with medical treatment; that the work performed by the claimant was in the usual course of the

---

[1] 45 Stat. 600, D.C.Code, Tit. 19, ch. 2, §§ 11, 12, 33 U.S.C.A. § 901 note.

[2] 44 Stat. 1424, 33 U.S.C. 901, et seq., 33 U.S.C.A. § 901 et seq.

employer's business "and the proper operation of the gas filling station, and that it was not casual". We take this to be equivalent to a holding that the status of master and servant existed. The bill of complaint challenges the finding.

In Crowell v. Benson, 285 U.S. 22, 53 S.Ct. 285, 76 L.Ed. 598, the Supreme Court said that Congress in providing in the Longshoremen's Act for injunction proceedings [3] evidently contemplated a suit in equity, and in such a suit complainant was entitled to plead and prove that the relation of master and servant did not exist and that the cause lay outside the purview of the statute. The Supreme Court further said that if in the trial it is shown that the relation of master and servant did not exist, the determination by the court of that fact will deprive the proceedings before the commissioner of their effectiveness. The lower court found the relation of master and servant did not exist and enjoined collection of the award of compensation, and so it becomes our duty to examine the evidence to determine whether the decision in this respect is correct.

Claimant testified that his business and occupation was that of a tank and pump mechanic; that he had worked for Mockabee at odd jobs from time to time as he was called upon; that he had no regular employment but for 15 years had been working in his line for various persons, corporations, and partnerships, that is to say, mostly around tanks, installing them, repairing them, and cleaning them, charging either a lump sum for the job or by the hour or in some cases by the month; that at times he would send a statement of his account on his letterheads or billheads made for that purpose. His first job for Mockabee was in 1932, when he installed gasoline tanks for a service station. "Then, after the station, I did his repairs. Whenever he had any repair work to do, he would call me in, and on either one of those stations there his employee or the son would check the time when I arrived to start the work and when I left. When this job was done at this work I was working at, I took this time slip down to him and he would pay me off according to the number of hours I had made". The last job for Mockabee prior to the injury was some six months or more before. The injury occurred on May 1, 1937. Mocka-

bee called him on the job because of trouble with a kerosene tank, and told him that he wanted it repaired. Claimant went to work on Thursday morning prior to the injury and found so much surface water over the top of the tank that he could not get to the manhole. He reported this to Mockabee, and it was agreed it was desirable to postpone the work until the water went down. On the following Saturday morning, after claimant had resumed the work, the explosion took place. Claimant was asked:

"Q. On this particular job where the explosion occurred, did I understand you to say that the work was to clean the gasoline pump or the kerosene pump? A. Kerosene pump.

"Q. You had to clean it? A. Yes, sir.

"Q. Had you done that before for Mr. Mockabee? A. I had, yes; cleaned their tanks; yes.

"Q. In the same way you were going to do this job? A. Yes, sir.

"Q. Was there anything said as to how the work was to be performed? A. No, sir.

"Q. He left that entirely to you? A. No, sir—yes, sir; he left that entirely to me. He just came down there and looked down and asked me when I would be finished, and I told him I couldn't tell; maybe it would be two or three hours; something of that kind."

Claimant's testimony as to the circumstances of the work was corroborated by Mockabee, who said that he had first hired claimant to install the tanks on a contract for so much for the job when completed, and that subsequently on three or four occasions he had engaged him to do repair work on the tanks; that he had never directed him how to do the work "because that was up to him to know"; that claimant had no regular hours for coming to work or quitting, but that on repair jobs he paid him for the actual number of hours required to do the work at so much per hour.

 In our opinion claimant was not an employee, but an independent contractor, for the evidence shows that, in carrying on the business in which he was engaged, he contracted with Mockabee to do the work according to his own methods and without being subject to the control of

[3] Longshoremen's and Harbor Workers' Compensation Act, sec. 21, 33 U.S.C. 921, 33 U.S.C.A. § 921.

622

Mockabee as to the manner or means by which the result was to be accomplished. Claimant's contract was to produce a specified result. The means by which this should be accomplished was left wholly under his direction and control. This gave claimant the status of an independent contractor and not of an employee. Casement v. Brown, 148 U.S. 615, 622, 13 S.Ct. 672, 37 L.Ed. 582; Chicago, Rock Island & Pacific Ry. v. Bond, 240 U.S. 449, 456, 36 S.Ct. 403, 60 L.Ed. 735. The established rule in such cases is that, where the employer does not control the work or the manner in which it shall be done, and the worker assumes the responsibility of direction and control, the fact that payment is on a per hour basis does not make the contractor a servant. On the subject generally, see Hebert v. Blair, La.App., 142 So. 849; Koch v. Matter, 307 Pa. 337, 161 A. 309; Renouf v. New York Cent. R. Co., 254 N.Y. 349, 173 N.E. 218; Holbrook v. Olympia Hotel Co., 200 Mich. 597, 166 N. W. 876; Dane v. Cochran C. Co., 164 Mass. 453, 41 N.E. 678; Gall v. Detroit Journal Co., 191 Mich. 405, 158 N.W. 36, 19 A.L.R. 1164; Larow v. Clute, 60 Hun 580, 14 N.Y.S. 616; Emmerson v. Fay, 94 Va. 60, 26 S.E. 386. There is nothing in the Act to destroy the common law meaning of "independent contractor". Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254. These propositions seem to us so well established that it would serve no useful purpose to pursue the subject. The whole question, including the quality or kind of contract which changes the relationship of employer and employee to that of principal and independent contractor, is discussed at length in 19 A.L.R. p. 1168 et seq., and 20. A.L.R. p. 684 et seq., and a great number of cases embracing every phase of the subject may be found there.

■ Second. Since in our opinion claimant was an independent contractor, he is not entitled to claim under the Compensation Act as an employee, and in this view it is unnecessary to decide the other question, namely, whether claimant's employment was casual and not in the usual course of the business of the employer. The question, however, in relation to the facts of this case, is settled in this jurisdiction by our decision in Hoage v. Hartford A. & Indemnity Co., 64 App.D.C. 258, 77 F.2d 381, in which we held that a bank's employment of an ironworker to repair a door in the banking house is casual and

not in the usual course of the employer's trade or business, since the word "casual" means incidental or occasional, and the words "usual course" refer to normal operations constituting the regular business of the employer. At the time of injury Fenner was engaged in repairing an instrumentality used in Mockabee's business. His employment was not regular in the sense of being constant. It was only occasional, lasting for short periods three or four times in four or five years. And we have held that no compensation is due for an injury incurred during the performance of a repair job, by a person occasionally employed for that purpose. Authorities to the contrary are inconsistent with the rule in Pennsylvania and in California, which in the Hoage Case we chose to follow. Callihan v. Montgomery, 272 Pa. 56, 115 A. 889; Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 P. 1031. Cf. Holbrook v. Olympia Hotel Co., 200 Mich. 597, 166 N.W. 876.

Affirmed.