**BROWN v. LUSTER et al.**

No. 11544.

Circuit Court of Appeals, Ninth Circuit.

Dec. 26, 1947.

182

James M. Carter, U. S. Atty., Ronald Walker and James C. R. McCall, Jr., Asst. U. S. Attys., all of Los Angeles, Cal., for appellant.

Samuel A. Miller and Harry M. Fain, both of Los Angeles, Cal., for appellees.

Before GARRECHT, DENMAN and BONE, Circuit Judges.

GARRECHT, Circuit Judge.

A proceeding was brought by Brown against Luster under § 8 of the Selective Training and Service Act of 1940, 50 U.S. C.A.Appendix, § 308, set forth in the margin.[1]

The record shows that the appellant is a World War Two veteran; that he was inducted on February 27, 1943 and received his final discharge on April 9, 1946; the appellees, M. R. Luster and A. M. Luster, were partners doing business in the partnership name of Sunbeam Furniture Company and on July 1, 1946 they incorporated their business, but the identity of the business was not lost by such change. The appellees were engaged in the business of furniture jobbers with principal office and place of business at 1337 and 1339 South Flower Street, Los Angeles. Their business area is divided into two, one is described as the City of Los Angeles, and the other is the territory lying from Fresno to the Mexican border-line and referred to as that area out-side of the City of Los Angeles. This case is concerned with the territory outside of the City of Los Angeles, in which the appellant sold furniture for the appellees prior to the time of his induction into the armed forces of the United States, and more particularly, from April, 1942 to February 26, 1943.

The record further shows that appellant was paid a commission of 7½ percent on the sales price of lamps and pictures on orders solicited and secured by him and forwarded or delivered to the appellees, and was paid the commission only on the orders accepted and when the goods were shipped. He also received as commission six percent of the sales price on all occasional furniture which he sold and secured orders for when the orders were accepted by appellees. There is no dispute as to any amount due the appellant up to the time of entering the service, it being established that all amounts were paid to him that were due.

During the absence of the appellant in service, the appellees secured another salesman for the outside territory in the person of one Ben Harris. Mr. Harris earned commissions in excess of those received by the appellant at the time he was acting as a salesman for the appellee.

Petitioner, on March 9, 1946, within the period allowed by the statute, made application to the appellees to be reinstated in his

[1] "§ 8 Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 308:

"(a) Any person inducted into the land or naval forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service * * * shall be entitled to a certificate to that effect upon the completion of such period of training and service, * * *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service * * *

* * * * * * *

"(B) If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's cirstances have so changed as to make it impossible or unreasonable to do so;

* * * * * * *

"(e) In case any private employer fails or refuses to comply with the provisions of subsection (b) * * * the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. * * *"

former territory, and while the record is silent on the commission to be paid, the court assumes that it would be the same compensation that he received prior to his entrance in the armed forces.

Appellee did not accept the application of appellant as made but did offer the territory in the City of Los Angeles, which offer was rejected by appellant.

Since April, 1946, after honorable discharge, appellant has been employed by the Los Angeles Chair Company as general manager, receiving a salary at the rate of $150 per week, or in excess of $600 per month.

In its oral opinion the District Court stated that if the petitioner was an "employee" of the respondent, he was entitled to reinstatement as such, but that if the petitioner was "an independent contractor" he was not so entitled.

In its Findings of Fact the Court carefully delineated the details of the work in which the appellant was engaged prior to his induction, as follows:

"5. From April 1942 to February 26, 1943, petitioner acted as a salesman of respondents' products in the territory above described under the following terms and conditions:

"(a) Petitioner's work as salesman consisted of soliciting orders from retail establishments for respondents under an oral agreement.

"(b) Petitioner was paid by respondents on a commission basis, the commission being payable only upon the acceptance of orders by respondents and the shipment and delivery of the goods pursuant thereto. Petitioner was paid at the rate of 7½% on the sale of lamps and 6% on the sale price of all occasional furniture sold.

"(c) Within the territory agreed upon and traveled by petitioner, petitioner was free to solicit orders in whatever time and manner he chose and from whatever customers he selected; he determined his own hours and place of work, his own schedules, sales routes and itineraries and employed whatever method of salesmanship he desired.

"(d) Petitioner was not required to spend full time or any particular time in such sales work and respondents did not prohibit petitioner from simultaneously selling other articles manufactured by other companies or from doing any other work for other persons at the same time he did work for respondents. At the time of his induction, and for several months prior thereto, the petitioner had not sold any articles for any companies or persons other than the respondents; and had covered his territory for the respondents alone.

"(e) Petitioner paid all of his own expenses incurred in the making of sales or solicitation of orders, including travel expenses averaging between $50 to $75 per week during the time he acted as salesman for respondents.

"(f) Respondents' office was not the headquarters of the petitioner. As salesman he visited respondents' office whenever it was convenient for him to do so. He was not required to be at respondents' office for any regular or scheduled sales meetings or for any other official purpose. His visits to and presence at respondents' office were always voluntary and on an informal basis. He had usually visited the respondents' place of business each week-end, and there discussed sales and prices with the respondents.

"(g) There was no sales quota imposed on petitioner while acting as salesman for respondents.

"(h) Respondents did not withhold any social security, unemployment compensation, or any other withholding tax from petitioner's commissions."

The District Court dismissed the proceeding on the ground that: "Conclusion of Law: 2. The contractual status of petitioner was that of an independent contractor and as such, petitioner is outside of the scope of the provisions of Section 308 of the Selective Training and Service Act of 1940; petitioner has failed to show that prior to his induction into the United States Army, he held 'a position in the employ' of the respondents and therefore his petition must be denied."

In his specifications of errors the appellant states: "1. The District Court's Conclusion of Law No. 2 that appellant 'failed to show that prior to his induction into the

United States Army he held a "position in the employ"' of the appellees, within the meaning of Section 8(b) of the Selective Training and Service Act of 1940, is erroneous, and not supported by the pleadings, the evidence, the Court's findings of facts, or the applicable law."

Nowhere in the Act is there a definition of what constitutes a "position in the employ of a private employer". The intent therefore must be gathered from the general and common understanding of the words used. It is reasonable to assume, however, that Congress would have so expressly provided if it had intended to include "independent contractors" within the purview of this law. This was carefully noted in the case of Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, 654: "The status which the Statute protects is 'a position * * * in the employ of' an employer—an expression evidently chosen with care. The word 'employee' was not used. While it may be assumed that the expression which was adopted is roughly synonymous with 'employee,' it unmistakably includes employees in superior positions and those whose services involve special skills, as well as ordinary laborers and mechanics. *Of course, the words are not applicable to independent contractors,* but, except for casual or temporary workers, who are expressly excluded, they cover almost every other kind of relationship in which one person renders regular and continuing service to another." (Emphasis supplied.)

We agree with the District Court that an independent contractor does not come within the interpretation of the Act. An independent contractor, as the word connotes, is more or less in the same category as a person in business for himself who because of his ability to produce without the control or direction of another is not subjected to the usual and common restrictions and regulations applicable to the ordinary employee. As a general rule, independent contractors are not within the purview of statutes the scope of which is defined by the generic term, "servants", "employees" or "agents", or by some expression which is ordinarily regarded as being applicable to a particular subdivision of the classes of persons embraced by these terms. 27 Am.Jur. 483, § 3. The question of whether one is an employee or an independent contractor has been considered in many cases, and for the purpose of determining it various tests have been applied. However, in each case all the facts must be considered together and thereafter resolved as of the time the relationship was entered into.

It is clear, too, that though the legislation in question is to be liberally construed for the benefit of the veteran it aims to apply its provisions to the existing relationship before induction and not to impose upon one person à liability toward another to whom there was no previous liability. Cf. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110.

In early decisions and very recently the Federal courts have given expression to the most important elements tending to establish the relationship of an independent contractor.[2]

Whether we are dealing with cases involving the responsibility of a person for the acts of those under his control or with remedial or regulatory statutes, the basic distinctions between an employee and an independent contractor are the same.

In United States v. Silk, heard together with Harrison, Collector of Internal

---

[2] Chicago, Rock Island & Pacific Railway Company v. Bond, Administrator of Turner, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735; Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384; Standard Oil Co. v. Anderson, 212 U.S. 215, 227, 29 S.Ct. 252, 53 L.Ed. 480; Casement v. Brown, 148 U.S. 615, 13 S.Ct. 672, 37 L.Ed. 582; Singer Mfg. Co. v. Rahn, 132 U.S. 518, 523, 10 S.Ct. 175, 33 L.Ed. 440; Cardillo et al. v. Mockabee, 70 App.D.C. 16, 102 F.2d 620; Meigs v. United States, 1 Cir., 115 F.2d 13; La Rochelle v. Commissioner of Internal Revenue, 7 Cir., 115 F.2d 878; Waggaman v. General Finance Co. of Philadelphia, Pa. Inc., and Warfield v. General Finance Co. of Philadelphia, Pa. Inc., 3 Cir., 116 F.2d 254, 258.

Revenue v. Greyvan Lines, Inc., 331 U.S. 704, 67 S.Ct. 1463, the Supreme Court laid down certain tests for this distinction. In Henry Broderick, Inc., v. Clark Squire, opinion filed October 10, 1947, 9 Cir., 163 F.2d 980, 982, involving the status of real estate brokers for the purpose of Social Security tax assessment, this Court determined them to be independent contractors on a comparison of the facts with the Silk and Greyhound Lines cases, supra. Following the reasoning of the Supreme Court we there said: "In this opinion the Supreme Court held that truck drivers involved in both the Silk and Greyvan cases, were not employees as the Commissioner of Internal Revenue contended, but were in fact independent contractors. In arriving at its decision the court enunciated a non-inclusive list of tests to be applied in determining the existence of an employer-employee relationship. These tests included degree of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation."

We might add to this non-exhaustive list of tests: lack of control or supervision, the independent contractor representing the will of an employer only as to the result to be accomplished, freedom to determine one's own hours of work and to engage in other professional activity, and "depend-[ency] upon [one's] own initiative, judgment and energy for * * * success", (Silk case supra [331 U.S. 704, 67 S.Ct. 1469] )—all of which factors were enjoyed by appellant.

 There is substantial evidence to support the findings of the Court and we agree that they were sufficient to bottom the conclusion that appellant exercised his own discretion with complete freedom in performing his services; that appellees exercised no direction or control over the manner in which the appellant chose to perform the work; and that appellant was responsible to appellees only as to the results obtained. Tested by these and the requirements of the cases enumerated to distinguish between an "employee" and an "independent contractor", these facts firmly establish the appellant to be an independent contractor and that he did not hold a "position" in the employ of the appellees.

 The second point on which appellant relies in this appeal is as follows: "2. The clear weight of the evidence is that in his employment, Appellant was the 'servant' or 'agent' of the Appellees and not an 'independent contractor', in that his employment was terminable at will, at any time, * * *"

It is the appellant's argument that the contract of employment was oral and terminable at will and that this fact would emphasize the power that the appellees may have had to control the work. This may be true in a pertinent case, but here there appears to have been an implied understanding as part of the contract that appellant could stop work and the appellees could dispense with his services at any time at will. Therefore, neither one was dependent upon the other for any previous notice or action in that regard. Though the right to terminate the relation between the parties is a circumstance that may be considered in an applicable case, still it is never a controlling factor. It must be remembered that such mutual right to terminate a contract exists in the relationship between an independent contractor and his principal. A principal who is interested primarily in the sale of his product has an interest in the ability of the independent contractor to sell his goods, which is reflected by the amount of sales, and he would naturally terminate the contract if the results were not beneficial to him. But that fact would not change the status of the relationship of principal and independent contractor existing between them, when all the other factors lead to that conclusion. It is the "total situation" (Harrison v. Greyvan, supra) which defines that relationship.

We have considered the other points advanced by the appellant. Inasmuch as we hold that he was an independent contractor and that therefore he is not entitled to reinstatement under the provisions of the Selective Training and Service Act, supra, we find no merit in them. We conclude that the judgment is based on and supported by competent evidence and is not contrary to law and it is hereby affirmed.